**The TRAVELERS INSURANCE COMPANY, Appellant,**

**v.**

**J. C. BARRETT, Appellee.**

**No. 5569.**

Court of Civil Appeals of Texas.

El Paso.

March 20, 1963.

Rehearing Denied April 17, 1963.

Turpin, Kerr, Smith & Dyer, Thornton Hardie, Jr., Max N. Osborn, Midland, for appellant.

Warren Burnett, Lee Arnett, Odessa, for appellee.

CLAYTON, Justice.

From a judgment on jury verdict awarding plaintiff maximum benefits under the

Texas Workmen's Compensation Law for total and permanent disability from injuries suffered September 7, 1959, defendant appeals.

■■ Plaintiff was injured while working as a roughneck on a drilling rig in Crane County, Texas. His claim for Workmen's Compensation was not filed with the Industrial Accident Board until on or about January 26, 1961, approximately sixteen months after the injuries were sustained. Article 8307, section 4a, V.A.C.S., requires such claims to be filed within six months after the occurrence of the injury. However, "good cause" may be shown for failure to file in time, but "[w]hen a claim is not filed within the statutory period of six months the good cause must continue to the date when same is actually filed" and "[t]he test of good cause for delay is that of ordinary prudence". Consolidated Casualty Insurance Company v. Perkins, 154 Tex. 424, 279 S.W.2d 299 (S.Ct., 1955).

Plaintiff apparently bases his claim to "good cause" for the late filing on two factors: First, that defendant's claim adjuster was said to have told plaintiff within about ten days after the accident that the latter's claim was being filed with the Industrial Accident Board (denied by the adjuster), and second, that plaintiff began receiving compensation checks and engaged in a number of conversations with the adjuster culminating in an offer by the adjuster, in January of 1961, of $5,500.00 in settlement of the claim.

The sequence of events was this:

Plaintiff was injured on September 7, 1959.

On or about September 17, 1959 the adjuster for the defendant insurance company went to see the plaintiff and at that time took a statement from plaintiff as to how the accident occurred, which statement was signed by plaintiff. Plaintiff contended that the adjuster told him that he (the adjuster) "wanted to file an accident claim or report.

I believe he called it a claim". There were two sets of papers that the adjuster filled out and he "insinuated" that he would file one copy with the Industrial Accident Board for the plaintiff. Plaintiff's wife and stepdaughter were present at the time of this occurrence and testified to the language employed by the adjuster. The wife testified: "He said it was a claim or something to that effect, that he was going to send one to the Accident Board in Austin, and one would be sent to the Midland Office for the files". The step-daughter testified: "He said that one of the claims went to the Industrial Accident Board and the other went to his file".

Plaintiff further testified that "shortly" after he was hurt he received a letter from the Industrial Accident Board enclosing two claim forms and advising plaintiff that if he had already filed the claim to disregard the letter. Plaintiff stated that he took the matter up with the adjuster who said "that was all taken care of, and to just disregard those" (forms), which plaintiff did. Plaintiff's wife corroborated this conversation with the adjuster but nevertheless, on about January 26, 1961 the wife wrote a letter to the Board and enclosed filled-out claim forms.

About a week or two after the visit from the adjuster on September 17, 1959 the plaintiff began to receive from defendant compensation payments in the amount of thirty-five dollars a week. There were seventeen such weekly payments "which included the first two weeks that they had to pick up * * * that they skipped on the first part of it".

From the time of the accident and continuing until late December of 1960 the plaintiff was receiving medical attention from various doctors under instructions from the claim adjuster and was being reimbursed for necessary travel expense in connection therewith through checks received from the defendant insurance company. Two such checks were introduced in evidence and were dated February 13, 1961.

For some eighteen months after plaintiff's injuries were sustained the claim adjuster was "negotiating" with plaintiff about settling his case, talking in "terms of a substantial amount of money". In January of 1961 the adjuster offered plaintiff $5,500.00 in settlement, conditioned upon plaintiff's waiving any future medical treatment. This offer the plaintiff rejected, and was informed by the adjuster a few days later that defendant company would not pay any larger amount. The next day plaintiff consulted an attorney which resulted in suit being filed.

Defendant, prior to trial and upon learning that counsel for the plaintiff would request the court for permission to go into the matter of the offer in settlement in the trial, filed his motion to exclude such testimony on the ground: 1) that the same would be highly prejudicial, 2) would not be admissible as testimony on any ground, 3) would have no bearing on the case, 4) that if such offer was ever made it was at a time long after the statutory six months had elapsed from the date of the injury and could have no bearing on "good cause" for the delayed filing of claim, and 5) being testimony concerning an offer in compromise, it would be against public policy as tending to discourage such offers. The motion to exclude was overruled by the court and plaintiff's counsel was allowed to elicit from plaintiff in the trial, over further objection of defendant, that in January of 1961 the adjuster had offered plaintiff $5,500.00 to settle the case.

The offer was undisputed and was not an issue before the jury. The jury found in answer to special issues that the adjuster caused plaintiff to believe that the latter's claim had been filed with the Industrial Accident Board within six months from the date of injury; that plaintiff believed, up until the time his claim was actually filed, that it had already been filed with the Board by the adjuster; that such belief prevented plaintiff from filing his claim until the time that it was actually filed, and that such belief constituted "good cause", as

that term was appropriately defined by the court, for not filing his claim sooner than it was actually filed. Based upon other jury findings, maximum benefits were allowed plaintiff in the judgment.

 In each of appellant's three points of error complaint is made that the trial court erred in overruling defendant's motion to exclude all testimony concerning the alleged "offer of compromise" made to plaintiff after the time for filing plaintiff's claim had elapsed, and in permitting such testimony to go before the jury. If the complained-of testimony constituted an offer of compromise and if it were introduced as an admission of liability on the part of the defendant, it would not have been properly admissible. 24 Tex.Jur.2d 194, ¶627 and the many cases therein cited. But "although inadmissible as an admission of liability, (an offer of compromise) may be admissible as relevant circumstantial evidence to prove a fact other than that of liability, such as due diligence" etc. 31 C.J.S. Evidence § 286, p. 1046. This rule seems directly applicable to the case at hand, where the defense was being urged that claim had not been filed with the Industrial Accident Board within the time required by law and that "good cause" (or due diligence) did not exist. We have seen how certain payments were made, and how meetings and negotiations were being carried on between the plaintiff and defendant's adjuster from about the date of plaintiff's injuries until the very month in which the latter's claim was actually filed. Plaintiff claimed to have relied upon a supposed statement by the adjuster made shortly after the injuries were sustained that the adjuster was filing the claim. His testimony in this respect, corroborated by his wife and stepdaughter, was believed by the jury which found in his favor on the "good cause" issue. Texas Employers' Ins. Ass'n v. McDonald, 238 S.W.2d 817 (Civ.App., wr. ref.). The offer in settlement was a further, persuasive circumstance bearing on this issue. We feel that there was no abuse of discretion on the part of the trial court,

under all the facts and circumstances, in admitting the complained-of testimony, and such a decision is within the discretion of the court. Texas Law of Evidence, McCormick and Ray, Vol. 2, p. 32, ¶1142; Merchants' Cotton Oil Co. v. Acme Gin Co., 284 S.W. 680 (Civ.App., no wr. hist.); Ditto v. Piper, 244 S.W.2d 547 (Civ.App., wr. ref. N.R.E.); Leija v. American Automobile Ins. Co., 242 S.W.2d 814 (Civ.App., dism.).

Had there been a request on the part of the defendant to limit the purpose for which the testimony might be considered it unquestionably would have been so limited by the trial court, but no such request was made. Fisher Construction Co. v. Riggs, 320 S.W.2d 200 (Civ.App., r. o. g.); 17 Tex.Jur. 361, ¶122.

Finding no error in this record, the appellant's three points of error are overruled and the judgment is affirmed.