Mayme Sue MARSH, Appellant,

v.

ORVILLE CARR ASSOCIATES, INC.,
Appellee.

No. 14703.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 16, 1968.

Rehearing Denied Nov. 20, 1968.

Paul M. Green, Lang, Cross, Ladon, Oppenheimer & Rosenberg, San Antonio, for appellant.

Paul E. Casseb, Harry J. Burns, San Antonio, for appellee.

KLINGEMAN, Justice.

This is an appeal from a judgment non obstante veredicto entered in favor of Orville Carr Associates, Inc., hereinafter called Carr, against Mayme Sue Marsh, hereinafter called Mrs. Marsh, in a suit on a sworn account to recover the purchase price of merchandise sold to Mrs. Marsh by Carr.

Mrs. Marsh had leased an apartment in Olmos Towers, a new high-rise apartment building in San Antonio, in July, 1965, to be effective upon completion of construction approximately in February, 1966. She desired to furnish said apartment. Carr is an interior decorating firm, and sometime in November, 1965, Mrs. Marsh went to the Carr studios and became particularly interested in a French armoire on display. Although she did not purchase such item on her first visit, she subsequently returned and arrangements were made with Mr. Jerry Stewart, an interior

decorator associated with Carr, to furnish and decorate Mrs. Marsh's Olmos Tower apartment. On December 16, 1965, Mrs. Marsh deposited $2,000.00 with Carr to be applied on merchandise to be sold and delivered to her on account. Thereafter, over a period of several months, various items of furniture, draperies, and other household accessories, including the French armoire, were purchased by Mrs. Marsh, and most of such items were delivered in April, 1966, when Mrs. Marsh moved into her apartment, although certain items were ordered and never delivered. During the latter part of April, 1966, a bill was sent to Mrs. Marsh by Carr and subsequently other bills were rendered to Mrs. Marsh but no payments were made thereon. Sometime prior to June 22, 1966, Mrs. Marsh decided to move out of such Olmos apartment, which Carr became aware of, and on June 22, 1966, Carr sent Mr. Stewart to Mrs. Marsh's apartment and requested payment in full or return of the merchandise. Upon Mrs. Marsh's refusal to pay such account, Stewart prepared and presented to Mrs. Marsh a note giving Carr permission to remove "its merchandise" from her apartment and Mrs. Marsh signed it. Thereafter, with minor exceptions, chiefly wall paper and other affixed items, all of the merchandise was removed from Mrs. Marsh's apartment and placed in Carr's warehouse where it has remained, with the exception of various items which were sold by Carr.

Only one Special Issue was submitted to the jury, to-wit:

## "QUESTION NO. 1

Do you find from a preponderance of the evidence that the Plaintiff, ORVILLE CARR ASSOCIATES, INC., by its conduct agreed to a rescission, as that term is defined herein, of the sale?

Answer 'Plaintiff did agree' or 'Plaintiff did not agree'.

We, the jury answer: Plaintiff did agree.

In connection with the foregoing question, you are instructed that the term 'rescission' means 'the undoing of a thing' and the placing of the parties to it in status quo. You are further instructed that the consent of the parties to the rescission of a sale of property may be implied from acts or conduct with reference to their dealings with the property, and need not be shown by an express agreement."

No objection to such special issue was made by Carr.

By her first and second points of error Mrs. Marsh asserts that the trial court erred in granting judgment non obstante veredicto because there was sufficient evidence to support the submission of such special issue and to support the jury's answer thereto.

■■■■ To support the action of a trial court in granting a judgment non obstante veredicto "it must be determined that there is no evidence on which the jury could have made the findings relied upon. In acting upon such motion all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in such party's favor." Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962); Green v. Texas Employers' Ins. Ass'n, 339 S.W.2d 368 (Tex.Civ.App.—Texarkana 1960, writ ref'd n. r. e.); Zachry v. McKown, 326 S.W.2d 227 (Tex.Civ.App.—Austin 1959, writ ref'd n. r. e.).

Carr maintains that the trial court did not err in granting judgment non obstante veredicto because there was no evidence to support either the submission of such special issue to the jury or the jury's answer thereto. It further asserts that as a matter of law the defense of rescission was not available to Mrs. Marsh because the undisputed evidence shows that the parties could not have been restored to their original status quo.

"The rescission of a contract by mutual consent does not require a formal agreement or release, but may result from any act or any course of conduct of the parties which clearly indicates their mutual understanding that the contract is abrogated or terminated, or from the acquiescence of one party in its explicit repudiation by the other." 2 Black, Rescission and Cancellation, § 528, p. 1244. "The consent of parties to the rescission of a contract may be implied from the circumstances of the case and from their dealings with reference to the subject matter of the contract, and need not be shown by an express agreement. Thus, for instance, if the seller of goods receives back the property sold and retains it, without objection and without notifying the buyer that he refuses to accept it or that he will hold it subject to his order or as his property, his consent to a rescission of the sale will be presumed." Black, supra, § 526, p. 1240. "When goods have been delivered to the buyer under a contract of sale, and he returns them to the seller, and the latter accepts the redelivery, and resumes and retains possession of the property as his own, and does not notify the buyer that he intends to hold it subject to his order or sell it for his account, the transaction operates as a complete rescission of the contract of sale. And it appears to be immaterial, in respect to the application of this rule, whether the purchaser assigns any reasons for returning the goods, or what his specified reasons may be, * * *. For his return of the goods is an offer of rescission, and the acceptance and retention of them by the seller is an acceptance of that offer, and thereupon a rescission is effected, not necessarily for legally sufficient cause, but by the mutual consent of the parties. * * * As to the conduct of the seller in a transaction of this kind, it is not necessary that he should explicitly consent to a rescission of the contract. It is enough if he retains the property returned to him without giving the buyer any notice that he does not accept it or will not resume ownership. Nor is it necessary that the buyer should take the initiative. The same effect of a rescission follows if the seller takes possession of the property claiming it as his own, without objection from the purchaser, * * *." Black, supra, § 531, pp. 1251–52. In Lynch Davidson & Co. v. Denman Lumber Co., 270 S.W. 225 (Tex. Civ.App.—Texarkana 1923, writ dism'd), it was held that "where the seller without legal justification and on his own volition takes back into his possession and control the property sold and delivered, and holds it subject to his order or as his property, or takes steps which are inconsistent with a completed sale and delivery of the property continuing in force, his assent to a rescission of the sale can be presumed." And if the buyer expressly consents or acquiesces in resumption of possession of the property by seller, rescission or abrogation is effected by mutual consent. See also 50 Tex.Jur.2d Sales § 89.

Mr. Orville Carr testified that there was a sale and delivery of the merchandise to a customer who had made a deposit with Carr and to whom credit was extended; that he did not make any agreement with Mrs. Marsh at the time of delivery of such goods that he reserved the right to retake possession of the merchandise. He further testified that after he became aware that Mrs. Marsh was dissatisfied with her apartment he became worried about not having received any payments from Mrs. Marsh, and on June 22, 1966, he sent Mr. Jerry Stewart to Mrs. Marsh's apartment to request an immediate payment for the merchandise or permit it to be returned to his studio. After Mrs. Marsh refused to make immediate payment, Stewart prepared the writing [1] which Mrs. Marsh signed, giving her consent to Carr's removal of

---

1. "June 22, 1966

I hereby give Orville Carr Associates authority/permission to have their merchandise removed from my apartment, No. 903 Olmos Tower, in my absence.

(Signed) MAYME SUE MARSH"

the merchandise. Thereafter Carr removed most of the merchandise from the apartment, except certain items which consisted primarily of those affixed to the premises, or items fabricated in the property formerly owned by Mrs. Marsh. The merchandise removed was placed in Carr's warehouse and has remained there since, except for some items which were sold by Carr. Mrs. Marsh testified that Carr repossessed the merchandise and that it was not her merchandise. Although both Mrs. Marsh and Mr. Carr testified that Mrs. Marsh at no time personally requested or authorized Carr to make sale of such merchandise, it is undisputed that several thousands of dollars of the merchandise was thereafter sold by Carr. Mr. Carr testified that he relied upon authority from Mrs. Marsh's attorney, specifically a letter from him dated July 14, 1966. This letter refers only to possible sales thereafter. It appears from the record that the French armoire which cost $1,200.00, and which was the item of furniture that Mrs. Marsh was particularly fond of and around which much of the furniture was designed, was sold sometime between June 22, 1966, and July 6, 1966, prior to said letter of July 14, 1966.

■ It is our opinion that there is sufficient evidence to support the submission of such special issue to the jury, and to support the jury's answer thereto.

■ In regard to Carr's contention that as a matter of law the defense of rescission was not available to Mrs. Marsh because the undisputed evidence discloses that the parties could not have been returned to their original status quo, a distinction must be made between involuntary rescission and voluntary rescission or rescission by mutual agreement. While as a general rule to obtain a rescission a party must either restore or offer to restore to the other party all that he has received under the contract

(13 Tex.Jur.2d, § 341, p. 613; 2 Black, supra, § 616), there are certain exceptions to this rule. As stated in Black, supra, § 616, "the rule does not apply in cases where the contract is rescinded by the mutual consent or agreement of the parties, since, in such cases, they are at liberty to arrange their own terms, * * *." In Corbin on Contracts, § 1236, Discharge by Rescission, p. 540, it is stated: "If the existing agreement that is the subject of rescission is still a bilateral contract, each of the parties has one or more rights under the contract to be given up, as well as one or more duties under it from which to be discharged. In such a case a mutual assent to a rescission is at once operative to discharge both parties. This is true even though the original contract that is the subject of rescission has been partly performed by one or by both parties thereto. Each of them still has certain advantages under the contract to give up; and by analogy with the doctrine of consideration in the formation of contracts, there is no requirement that each of the parties should have the same amount to give up or that the rescission should be equally advantageous to both parties."

■ The record sufficiently establishes all the necessary elements of a mutual voluntary rescission and the trial court erred in granting judgment non obstante veredicto.

Mrs. Marsh also asserts that the court erred in not granting her motion for judgment and that this Court should render judgment in her favor. Mrs. Marsh, with her motion for judgment, submitted a proposed judgment which provides for a take-nothing judgment as to Carr against her and decrees that judgment be entered for Mrs. Marsh against Carr in the sum of $1,259.38. Mrs. Marsh, in addition to her answer, filed a cross-action alleging that she had made a deposit of $2,000.00 with

Carr in connection with the purchase of merchandise, that such sum had never been returned to her, that upon rescission of such contract and repossession of the bulk of the merchandise Carr became indebted to her for said sum of $2,000.00, save and except an offset to Carr for the value of the items remaining in Mrs. Marsh's possession which Carr did not remove, and a reasonable sum for the rental value of the other goods, wares and merchandise for the period of time Mrs. Marsh had possession of them. No special issues were requested or submitted to the jury in connection with Mrs. Marsh's cross-action.

It is the decision of this Court that there was a mutual voluntary rescission of such sale, in which Carr gave up certain rights and benefits, to-wit, the right to sue for its entire account, and received certain benefits, to-wit, the return of such merchandise as it desired to remove, and Mrs. Marsh also gave up certain rights and benefits, to-wit, the right to retain all of the merchandise, and received certain benefits, to-wit, a cancellation of the amount owing on her open account. Prior to the time that Mrs. Marsh agreed to the removal of such merchandise, she had received a bill from Carr, dated April 20, 1966, in the total amount of $15,053.04 with a credit thereon of $2,000.00 for the deposit made, leaving a net balance owing of $13,053.04. This was the status on June 22, 1966, when Carr demanded payment of its bill or return of the merchandise. Mrs. Marsh accepted such offer by refusing to pay such account and agreeing to the return of the merchandise, and there is nothing in the record to indicate that any reference or agreement was made pertaining to the return of said sum of $2,000.00.

The judgment of the trial court is reversed and judgment here rendered that Carr take nothing against Mrs. Marsh, and that Mrs. Marsh take nothing against Carr. All costs are adjudged against Carr.