Margaret J. CROWE et vir., Appellants,

v.

FRED C. KROEGER & SONS et al.,
Appellees.

No. 7235.

Court of Civil Appeals of Texas,
Beaumont.

May 27, 1971.

**508**

Hope, Henderson, Hohman & Georges, San Antonio, for appellants.

Groce, Hebdon, Fahey & Smith, San Antonio, for appellees.

KEITH, Justice.

Mrs. Crowe, joined by her husband, sued the defendants for personal injuries alleged to have been sustained when Mrs. Crowe's automobile was struck by one driven by an agent for the defendants. The plaintiffs appeal and we will designate the parties as they appeared in the trial court. The accident is alleged to have happened on January 10, 1969, and the suit was filed on April 24, 1969. In its first amended original answer, defendants pleaded that on January 18, 1969, the plaintiffs, for and in consideration of the sum of $113.08 to them in hand paid by draft issued by an insurance company adjuster, had released the defendants from all liability by reason of the occurrence made the basis of the suit.

By supplemental petition, plaintiffs pleaded that the release was procured by fraud; that the draft representing the consideration bore on its face a notation that the same was "void if not presented for payment within 60 days from "date of issue." This allegation was followed by a further statement that on January 27, 1969, the draft was returned to the defendants' insurance carrier, without endorsement or presentment for payment and the carrier "then and there accepted and retained the same for their own use and benefit;" and, that the consideration for the release had wholly failed. Further allegations were contained in the supplemental petition to the effect that for approximately a year after the execution of the release, the insurance carrier had pursued a course of conduct "in which the mutual repudiation of the aforesaid release was acknowledged and affirmed, thereby affirmatively waiving and abandoning any valid release in favor of the defendants."

Upon motion of the defendants, pursuant to *Rule 174b*, the trial court granted a separate trial upon the issue of the validity of the release. The verdict of the jury, to which we will turn in a moment, was favorable to the defendants and the court entered judgment that the plaintiffs take nothing.[1]

The court submitted twenty-six special issues which were in clusters, the controlling factual element being the first in each series. The burden of proof was placed upon the plaintiffs in each issue and the jury returned negative answers, thereby *failing to find* the necessary facts upon which plaintiffs' dependent issues were

---

I. The action of the trial court in ordering the separate trial, under the circumstances of this case, was entirely proper.

Kansas University Endowment Ass'n v. King, 162 Tex. 599, 350 S.W.2d 11, 19 (1961).

conditioned. [C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 195 (Tex.Sup., 1966).] We summarize the issues to which the negative answers were returned:

(1) Defendants' insurance adjuster represented to Mrs. Crowe that if there were additional expenses or treatment needed, the insurance company would pay therefor;

(6) that the adjuster represented to Mrs. Crowe that it was not necessary for her to read the release, but to sign it as it was only an agreement for damages incurred as of that time;

(11) that the adjuster represented to Mr. Crowe that if there were additional expenses, the insurance company would pay for them;

(16) that the adjuster represented to Mr. Crowe that if he did not endorse the draft or check it would be no good;

(21) that the adjuster represented to Mr. Crowe that he did not have to read the instrument he was to sign since it was just a form showing that he had received a check or draft; and,

(26) that the defendants, acting through its agent, the insurance company, "by its conduct agreed to a rescission" of the "purported release." This issue contained a definition of rescission which comes to us without objection.

Plaintiffs do not complain of the charge as a whole, but do attack the non-findings of the jury as to Special Issues Nos. 6, 11, 16, and 21 with "no evidence" and "insufficient evidence" points. The attack on Special Issue No. 1 is confined to an "insufficient evidence" point and no attack is made directly upon the quamtum of evidence to support the non-finding to Special Issue No. 26, submitting rescission. Plain-

tiffs' first point, and the one which is most vigorously pursued, complains of the trial court's action in sustaining a motion in limine which prevented their trial counsel from testifying to dealings which he had had with the adjuster representing defendants' insurance carrier.

The motion in limine which forms the basis of plaintiffs' point one is not included in the transcript. Its importance lies in the reasons assigned for the exclusion of the testimony mentioned in the bill of exceptions and the propriety of the court's action in that connection.[2]

The absence of the motion in limine from our record would have readily become apparent to the parties at the time of the filing of the briefs had either complied with the provisions of *Rule 418(c)*. The complaint, relating to an alleged improper rejection of evidence, required plaintiffs to set out the substance thereof (which they did) "with reference to the pages in the record where the same may be found" (which they did not). Instead, plaintiffs have briefed the point, not only without a page reference to the motion in limine, but without even a factual statement of its contents—and, defendants have replied similarly. We consider the point in the posture in which it is presented by the parties.

Our discussion of plaintiffs' first point complaining of the exclusion of their lawyer's testimony requires that we make a detailed summary of the proffered evidence. A. J. Hohman, Jr., plaintiffs' counsel whose testimony is involved in the point, said that his first conversation with anyone from the insurance company was "after the month of January" when a man by the name of Newell called him. Hoh-

2. The court remarked, after the completion of plaintiffs' bill: "Consistent with the ruling that the Court made with respect to the Motion in Limine the testimony offered by the witness save and except that relating to the draft not having been—or the amount of the draft not having been retendered until the Defendants' pleadings making such a tender were filed will not be admitted in evidence before the jury." There was evidence before the jury that the draft was "retendered" in amended pleadings.

man made a notation in his file, which we quote:

"* * * this is the notation made on March 21, 1969, as follows: 'Jimmie Newell of T.E.I.A. called; said that release was no good since no consideration had passed.' Abbreviated consideration, 'consd.' 'Admitted liability was with us—said so advised Mrs. Crowe.'"

Hohman also said that in this conversation Newell requested him to furnish medical records concerning the treatment of Mrs. Crowe after she had signed the release. Hohman procured the records from a government hospital at no expense, reproduced such records at his own expense, and furnished them to Newell. He was not reimbursed for the cost of the reproductions.

Hohman testified as to his next contact with Newell in these words:

"* * * the day after Mr. Newell received the medical records, and more specifically April 22, 1969 he called me, and requested a settlement demand figure from me, and at that time I quoted a settlement demand figure of $4,000, and he stated to me that his company will not be willing to pay more than $1,000 for our share of the proceeds and $1,000 more or less for the government's—for the · medical expense incurred. Of course, we, again, rejected the offer of settlement."

He said that he filed the suit very shortly after "they rejected our offer of settlement" and our record shows that suit was filed on April 24, 1969, two days after his second conversation with Newell. Hohman added that after he filed suit, he furnished defendants' counsel with additional medical records at his request.

Plaintiffs contend that such testimony goes "to the very crux of proof of mutual rescission." Without citing any authority in their original brief in support thereof, plaintiffs also contend that the general rule excluding offers of compromise (see 24 Tex.Jur.2d, Evidence, § 627, pp. 194–196) must be subordinated to some undefined but overriding rule "in a case where essential elements of proving mutual rescission are the acts and conduct and dealings between the parties." In their original brief, plaintiffs cited only one authority in support of their first point: Marsh v. Orville Carr Associates, Inc., 433 S.W.2d 928 (Tex.Civ.App.—San Antonio, 1968, error ref. n. r. e.), and particularly the quotations from 2 Black Rescission and Cancellation, § 528, p. 1244, found at p. 931. We are in accord with the reasoning of Justice Klingeman in *Marsh* and would recognize in a proper case the validity of the authorities upon which he relies. However, *Marsh* is neither persuasive nor controlling in our case. We are dealing with a question of excluded evidence and whether its exclusion amounted to reversible error.

Knoll, the adjuster for the defendants' insurer, was tendered as a witness upon the trial and about half of the statement of facts is devoted to his testimony in the presence of the jury. He was interrogated by skillful and resourceful counsel for the plaintiffs upon every theory which related, remotely or proximately to the issue being tried to the jury. Plaintiffs' Exhibit No. 1 to the jury was a letter from their counsel to the insurer dated January 27, 1969, which, after identifying the parties and the date of the accident, read:

"Please be advised that this office represents the legal interests of above named in connection with an automobile collision which occurred on or about January 10, 1969.

"Your offer of payment of $113.08 is unacceptable and such offer is herewith rejected. Accordingly, your check dated 1/17/69, No. 821999, Claim No. 69–06–05051 is enclosed herewith without endorsement for your cancellation."

The receipt of the letter and the unendorsed draft was admitted by the witness and plaintiffs' Exhibit No. 2 to the jury was the original of the draft which bore

no endorsement or evidence of either negotiation or payment. According to Knoll, in testimony given upon cross-examination, the original of the draft which had been returned with counsel's letter "was sent to our permanent file in the home office;" that there was "no need to cancel it—there was no endorsement on it. It was just put in the file—"

The husband and wife plaintiffs both testified extensively concerning their allegations of fraud, repudiation of the release, mutual rescission, etc., and the jury had full and complete—even replete—explanations of all of the acts, conduct, and declarations of the participants in the execution and delivery of the draft and release. Knoll, the adjuster who delivered the draft—not Newell mentioned by Hohman—told of its return with the letter and the eventual disposition of the draft. So, when we boil down plaintiffs' complaints as to the exclusion of their lawyer's testimony we have only three remaining fragments which could have any possible bearing on the outcome of the issue then on trial: (a) the offer of compromise and its rejection, followed by the immediate filing of suit; (b) Newell's legal conclusions as to the validity of the release; and (c) counsel's trouble and expense of furnishing copies of medical records after he had rejected the prior settlement agreement of the parties. In their post-submission brief, plaintiffs seem to agree with this analysis of the portions of Hohman's testimony which would have been pertinent to any issue involved, saying that the bill of exception "demonstrates that vital and crucial material facts were developed touching on the conduct of the parties * * *"

■ Against this background, plaintiffs labor under the burden of showing first, that it was error to exclude the proffered testimony and, secondly, that the error, if it was error, amounted to such a denial of their rights as was reasonably calculated to and probably did cause the rendition of an improper judgment in this case.

Plaintiffs argue vigorously that the testimony of Hohman as to the offers of compromise was admissible and that the court erred in its exclusion. In this connection, plaintiffs cite in their supplemental brief and rely largely upon Travelers Insurance Company v. Barrett, 366 S.W.2d 692 (Tex.Civ.App.—El Paso, 1963, no writ). One other case is called to our attention, General Accident Fire & Life Assur. Corp. v. Callaway, 429 S.W.2d 548 (Tex.Civ.App. —Houston, 1st, 1968, no writ), although we can find little therein of aid and comfort to plaintiffs.

■ Assuming, arguendo, that *Barrett* announces a correct rule of law, and that offers of compromise may be introduced as original evidence for some purpose other than showing liability, plaintiffs in our case still have not shown reversible error under point one of their brief. Plainly, plaintiffs seek to bind the defendants (and their insurer) to statements made by Newell, not by statements made by the original adjuster who negotiated the compromise and delivered the original draft. Our record shows that the draft was drawn upon Employers Casualty Company, and Hohman identified the person who made the offer as "Jimmie Newell of T.E. I.A." There is no showing in our record that Newell was an agent, servant, or employee of either the defendants or Employers Casualty Company, their insurer; nor, is there any evidence from any source whatsoever which would establish that the statements attributed to Newell were within the scope or apparent scope of his authority as an agent, if he was, of any of the parties hereto.[3]

---

3. In 1 McCormick and Ray, Texas Law of Evidence (2d Ed.), § 152, p. 172, it is said: "* * * it is well settled that the scope of the exercise of the function of judicial notice is not coextensive with the personal knowledge of the individual judge. Personal knowledge is not judicial knowledge. The judge may personally know a fact of which he cannot take judicial notice."

The text-writer in 2 Tex.Jur.2d, Agency, § 268, p. 732, sets out a fundamental rule of general acceptance when he says:

"Before the declarations of an alleged agent can be admitted in evidence to show, as against the alleged principal, either the existence of the agency or the scope of the agent's authority, the fact of the agency must first be proved, either by acts of the principal himself or else by other facts that are sufficient for this purpose."

Or, as was said in Moreland v. Leslie, 140 Tex. 170, 166 S.W.2d 902, 904 (1942):

"It is an elementary principle that before one person can be held responsible for the acts of another, in the absence of special circumstances, it must appear that the latter was the agent of the former and was acting in the scope of his employment in doing what he did."

We find no evidence of any attempt on the part of the plaintiffs to establish the agency of Newell or his authority to bind any of the defendants or their insurer.

■ Further, appellants, having tendered Hohman's testimony as a package, are now faced with the rule that the court could properly reject the whole if any part thereof was inadmissible. The authorities are collated by Chief Justice Dunagan in Texas General Indemnity Company v. Ellis, 421 S.W.2d 467, 473 (Tex.Civ.App.— Tyler, 1967, no writ), wherein this language is used:

"It seems to be the settled law of this state that where evidence is offered as a whole, only a part of which is admissible, the court does not commit error in sustaining an objection to such testimony and in such case it is not the duty of the court nor the party objecting to the same to separate the admissible from the inadmissible. [Citations omitted.]"

After a review of the entire record, we are convinced that plaintiffs have not shown that the error complained of amounted to such a denial of their rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this cause. Point one is overruled.

In points two through ten, plaintiffs attack the non-findings of the jury in response to Special Issues Nos. 1, 6, 11, 16, and 21, which we have summarized previously, by no evidence and insufficient evidence points. We review these points under the rules announced in the much-cited case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). It would unduly extend this opinion to set out the testimony introduced upon the several issues. The case was presented vigorously by the plaintiffs and was competently defended. The burden of proof upon each of the issues under review was assumed properly by plaintiffs and the questions presented were peculiarly within the province of the jury. Having reviewed the evidence under the appropriate standards, we overrule the several points under discussion. Cf. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.Sup., 1965).

While we have grave doubts as to the efficacy of the last two points brought forward (because of their generality and lack of specific support in the amended motion for new trial), in the interest of an orderly disposition of the cause, such points will be noticed here. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482 (1943). Plaintiffs contend, in essence, that because they failed to endorse and negotiate the draft issued by the defendants' insurer at the time of the execution of the release, the consideration for the release failed. The authorities cited in support of this proposition have been examined and are found not to be in point. It is clear from the record, indeed the conclusion is inescapable, that the draft was rejected, not because of the medium of payment but the amount thereof. In Cockrum v. Under-

wood, 301 S.W.2d 953, 954 (Tex.Civ.App. —Beaumont, 1957, no writ), it is said:

"When a tender is refused for reasons other than the medium tendered, one may not later, as in the case at bar, complain of the medium of tender; 40 Tex. Jur., pg. 852; Gulf Pipe Line Co. v. Nearen, 135 Tex. 50, 138 S.W.2d 1065."

See also, Johnson v. Norfolk, 76 S.C. 565, 82 N.W.2d 656 (1957); Page v. Means, 192 F.Supp. 475, 479 (D.C., N.D., W.Va., 1961). Points eleven and twelve are overruled.

Having examined the several points brought forward for review, and not having found reversible error, the judgment of the trial court is in all things affirmed.