## No. C-510

### Robert S. Lamson v. Commercial Credit Corporation

(531 P.2d 966)

Decided February 10, 1975.

Allen, Mitchell and Rogers, Garth W. Rogers, for plaintiff-appellee.

Hellerstein, Hellerstein and Shore, P.C., Stephen A. Hellerstein, Erick B. Carlson, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

Plaintiff Lamson possessed two checks issued by the defendant Commercial Credit Corporation. He sued the defendant for the face value of the checks, plus interest. The trial court found for Lamson, but the Court of Appeals reversed. *Lamson v. Commercial Credit Corporation,* 33 Colo. App. 343, 521 P.2d 785 (1974). We granted certiorari. We reverse the Court of Appeals, with directions.

I.

A chronology of the transactions and the subsequent court trial and appeal draws the issues into focus. Originally, the drawer Commercial Credit Corporation ("the Corporation") issued the two checks payable to Rauch Motor Company ("Rauch"). Rauch indorsed the checks in blank, deposited them to its account in University National Bank ("the Bank"), and received a corresponding amount of money. The Bank stamped the checks "pay any bank," and initiated collection. However, the checks were dishonored and returned to the Bank with the notation "payment stopped." Rauch was obliged to return the money advanced. Its account with the Bank was then overdrawn, but through subsequent deposits Rauch regained a credit balance, which the Bank used to repay itself.

Some months later, to compromise a lawsuit, the Bank executed a special two-page indorsement of the two checks to the plaintiff Lamson. Lamson sued the defendant drawer Corporation on the checks. The Corporation pled a twofold defense. It affirmatively alleged fraud in the inducement and prior payment by Rauch.

The trial court found that the Corporation failed to prove fraud or any other defense. It concluded the defense of payment was unavailable under the Uniform Commercial Code, section 4-3-306, C.R.S. 1973. Judgment was entered for Lamson for the face amount of the checks plus the legal interest.

In reversing the trial court the Court of Appeals held as a matter of law that the plaintiff Lamson was not a holder of the checks. It arrived at the decision by ruling that the Bank's indorsement to Lamson was not in conformance with the Uniform Commercial Code because it was stapled to the checks. It was this interpretation of section 4-3-202(2) which prompted us to grant certiorari. It is that holding of the Court of Appeals which we expressly reverse.

## II.

When Rauch deposited the checks, it indorsed them in blank, transforming them into bearer paper. Sections 4-1-201(5) and 4-3-204(2). The Bank in turn indorsed the checks "pay any bank." That is a restrictive indorsement. Section 4-3-205(c). After a check has been restrictively indorsed, "only a bank may acquire the rights of a holder . . . [u]ntil the item has been specially indorsed by a bank to a person who is not a bank." Section 4-4-201(2)(b).

There is no question that the checks were indorsed to Lamson by name, thus qualifying as a special indorsement. Section 4-3-204(1). The problem is whether the special indorsement was correctly and properly affixed to the checks under section 4-3-202(2). It provides *inter alia* that "[a]n indorsement must be written . . . on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof."

The subject indorsement was typed on two legal size sheets of paper. It would have been physically impossible to place all of the language on the two small checks. Therefore, the indorsement had to be "affixed" to them in some way. Such a paper is called an allonge. In this case the allonge was affixed by stapling it to the checks.

We agree with the Court of Appeals' statement that a separate paper pinned or paper-clipped to an instrument is not sufficient for negotiation. Section 4-3-202(2), comment 3. However, we hold, *contra* to its decision, that the section does permit stapling as an adequate method of firmly affixing the indorsement. Stapling is the modern equivalent of gluing or pasting. Certainly as a physical matter it is just as easy to cut by scissors a document pasted or glued to another as it is to detach the two by unstapling. Therefore we hold that under the circumstances de-

scribed, stapling an indorsement to a negotiable instrument is a permanent attachment to the checks so that it becomes "a part thereof."

Section 4-1-201(20) defines a holder as "a person who is in possession of . . . an instrument . . . indorsed to him . . . ." The Bank's special indorsement, stapled to the two checks, effectively made Lamson a holder, although not a holder in due course.

### III.

Once signatures are proven, Lamson, as a holder was entitled to payment by mere production of the instrument unless the Corporation established a defense. Sections 4-3-301 and 4-3-307(2).

There were numerous defenses available to the defendant under the Uniform Commercial Code. As noted previously, Lamson was a mere holder, not a holder in due course. Section 4-3-306 provides, *inter alia,* that he took the instruments subject to

"(b) All defenses of any party which would be available in an action on a simple contract; and

"(c) The defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose . . . ."

C.R.C.P. 8(d) mandates that in his answer to the complaint the defendant affirmatively plead any defenses or mitigating circumstances. The defendant, however, did not assert defenses under sub-paragraph (c) *supra,* in the Code, and chose instead to stand upon two other defenses.

■ The defendant first pled the defense of fraud in the inducement. The record shows that the Corporation tried to prove by hearsay evidence what it could not prove directly. The trial court properly excluded such evidence, and found that the Corporation had failed to sustain its required burden of proof.

■ The Corporation's second defense was that the checks had already been paid by someone else. This defense was not available to it for the following reasons:

When the checks were dishonored, the owner Rauch had to bear the risk of loss because the depository Bank had allowed it to withdraw against the checks before they were collected. At that time Rauch's account with the Bank became overdrawn. The

Bank held a security interest with a right of charge back to debit Rauch's account. Sections 4-4-201(1); 4-4-208(1); 4-4-212(1). Rauch subsequently made deposits and the Bank charged back its account until its debt was paid off. Rauch then again became entitled to possession of the checks.

The Corporation seeks to assert for itself as underlying obligor Rauch's third-party defense of payoff. Such a position is untenable. Under section 4-3-306(d), "[t]he claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party." *See especially* section 4-3-306(d), comment 5.

Rauch is not even involved in this lawsuit, and understandably has not rushed to defend the action on behalf of the Corporation. But Rauch was not made an involuntary defendant or otherwise brought into the suit. Thus the Corporation may not assert Rauch's defense as its own.

█ The record indicates that there might have been presented other defenses, especially failure of consideration and nonperformance of a necessary condition precedent for floor planning, namely, the non-possession of the autos, which were the subject matter of the floor plan. However, the Corporation for whatever reason it may have had did not plead these defenses and merely alluded to them through a brief statement by the main witness. The case was not tried on such defenses and the pleadings were not amended to permit development of the defenses and we therefore cannot consider them here. We therefore affirm the trial court, which had no choice but to order payment to Lamson as a holder of the instruments.

## IV.

█ Having failed to establish a defense, the Corporation must make good its promise to pay. Nor will the Corporation be exposed to double liability, as it contends. Upon payment of the checks, its liability is completely discharged. Section 4-3-603. Once the obligor is discharged on the instruments, he is also discharged on the underlying obligation. Section 4-3-802(1)(b). Any further debate of who owes whom will have to be settled in a separate lawsuit.

█ Finally, no payment to plaintiff Lamson would be contrary to the restrictive indorsement "pay any bank." The Bank freely

transferred its rights by special indorsement to Lamson, who became a holder in his own right. Section 4-4-201(2)(b). It is apparent that the second indorsement to Lamson supersedes the first restrictive indorsement, and such action by the Bank is the equivalent of a constructive cancellation. Section 4-3-208. Thus, any satisfaction to the ensuing holder is not inconsistent with the terms of the previous restrictive indorsement. Sections 4-3-206 and 4-3-306(d).

V.

Since we decide that Lamson became a holder by special indorsement, we do not have to consider whether he acquired rights as an assignee.

The judgment is reversed, and the cause remanded with directions to reinstate the judgment of the trial court.