William J. ESTRADA, Appellant,

v.

RIVER OAKS BANK & TRUST COMPANY, Appellee.

No. 1494.

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 23, 1977.

Rehearing Denied May 11, 1977.

William P. Pannill, Houston, for appellant.

Mike A. Pohl, Bracewell & Patterson, Houston, for appellee.

COULSON, Justice.

River Oaks Bank & Trust Co. sued George J. Lewis on a promissory note se-

cured by a collateral assignment of four unindorsed promissory notes executed by Dr. William J. Estrada payable to the order of Lewis. River Oaks joined Dr. Estrada as a defendant to recover on the four notes held as collateral. Summary judgment was granted River Oaks against Lewis on the principal obligation, and Lewis is not a party to this appeal. River Oaks and Estrada filed opposing motions for summary judgment; River Oaks claiming it was entitled to recover on the four notes as a holder in due course, and Estrada contesting River Oaks' holder in due course status, and asserting a complete offset by virtue of an unsatisfied judgment awarded Estrada against Lewis on another note. The trial court granted summary judgment for River Oaks and Dr. Estrada perfected this appeal. Having determined that neither party was entitled to summary judgment, we reverse and remand.

On February 25, 1970 Estrada executed four promissory notes (the Estrada notes) totalling $21,936.05 to Lewis to acquire part interest in four parcels of Harris County real estate. The notes were made payable to the order of Lewis in installments due each six months, the final installments due February 25, 1973. Estrada, in a memorandum in the trial court, asserted that payments made on the notes reduced the principal sum owed Lewis to $13,161.55, but Estrada did not plead payment in his answer or in his motion for summary judgment, and no evidence of the alleged payments appears in the record.

On December 15, 1971 George Lewis, William Estrada, and GEM Motors executed a promissory note to the order of Jacinto City Bank for the principal sum of $20,000.00 (the 1971 note), due on or before March 14, 1972. Upon default, Estrada paid the amount owed on the note to Jacinto City Bank, and Jacinto City Bank indorsed the note, without recourse, to Estrada.

The 1971 note bears Estrada's signature as a comaker, but Estrada contends that he signed the note merely as a surety. Accordingly, Estrada sued George Lewis and GEM Motors on the 1971 note. On January 16, 1975, final judgment was entered for Estrada against Lewis for $26,715.27 plus interest and attorney's fees. It is this judgment that Estrada contends is a complete offset to the four notes assigned by Lewis to River Oaks.

River Oaks loaned Lewis $15,000.00 on August 8, 1972. In connection with this loan, Lewis executed a promissory note to River Oaks (the original Lewis note), secured by a collateral assignment of the four promissory notes executed by Estrada to Lewis in 1970 (the Estrada notes). Although it is undisputed that ample space existed on the front and back of the Estrada notes,[1] Lewis did not indorse any of the Estrada notes to River Oaks. Lewis did sign a single collateral assignment, expressly referring to the Estrada notes, which was stapled by River Oaks to the Estrada notes. Lewis made regular loan reductions on the original note, and a renewal note for $6,000.00 was executed by Lewis on January 2, 1975 (the Lewis renewal note).

Lewis ultimately defaulted on the $6,000.00 renewal note, prompting River Oaks to sue Lewis and Estrada on August 25, 1975. River Oaks sought to recover $6,000.00 plus interest and attorney's fees from Lewis on the renewal note; $21,936.05 plus interest and attorney's fees from Estrada on the Estrada notes.

Estrada filed a motion for summary judgment supported by a record consisting of River Oaks' original petition, Estrada's first amended original answer, Estrada's request for admissions and answers thereto, and a sworn "Memorandum of Points and Authorities in Support of Motion for Summary Judgment" which was attached to the motion for summary judgment. River Oaks filed separate motions for summary judgment against Lewis and against Estrada. River Oaks' motion against Estrada, supported by the attached affidavit of Riv-

---

1. This undisputed fact cannot be verified by the court, because only the faces of the notes are reproduced in the record.

er Oaks vice president Kim D. Wheless, sought recovery of $21,936.05 plus interest and attorney's fees.

An interlocutory judgment for $6,000.00 plus interest and attorney's fees was entered for River Oaks against Lewis. On May 13, 1976 summary judgment was granted for River Oaks against Lewis and Estrada, jointly and severally, for $6,000.00 plus interest and attorney's fees. This judgment became final when a cross-action by Lewis against Estrada was severed from the main suit. Estrada has perfected an appeal from the granting of River Oaks' motion for summary judgment and from the overruling of Estrada's motion for summary judgment.

When both parties file motions for summary judgment and one motion is granted and the other is overruled, the trial court's judgment becomes final and appealable. On appeal the court of civil appeals should determine all questions presented, including the propriety of the order overruling the losing party's motion for summary judgment. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). Therefore, it is proper for this court to consider the decision of the trial court in overruling Estrada's motion for summary judgment.

Estrada claims the trial court erred in granting summary judgment for River Oaks because its moving papers were either conclusory or presented without notice to Estrada. River Oaks contends that Estrada's sworn brief was not competent summary judgment evidence. Both parties rely on the two supreme court decisions in *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex.1971) (pleadings are not summary judgment evidence) and 487 S.W.2d 702, 703 (Tex.1972) (conclusory affidavits will not support summary judgment). We

need not decide these procedural issues. Even if we were to assume that both parties submitted proper summary judgment evidence to the trial court, our interpretation of the Uniform Commercial Code would still preclude summary judgment for either movant.

## I.

This appeal presents the question of whether the transferee of four unindorsed promissory notes stapled to a single collateral assignment is a holder in due course.

A "holder in due course" is defined in section 3.302 of the Texas Business and Commerce Code.[2] A holder in due course must meet five conditions set forth in the statute. He must be: (1) a holder (2) of a negotiable instrument who took it (3) for value (4) in good faith (5) without notice that it was overdue or had been dishonored or of any defense against or claim to it on the part of any person. Failure to meet any of these conditions prevents a party from qualifying as a holder in due course. J. White & R. Summers, Uniform Commercial Code § 14–2 (1972) [hereinafter cited as White & Summers]. Therefore, only a "holder," as defined in the Code,[3] can be a holder in due course. White & Summers, *supra*, at § 14–3.

The Code definition of a holder applies to payees and transferees of negotiable instruments. A transferee, however, must also meet the negotiation requirements of section 3.202:

(a) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorse-

---

2. Tex.Bus. & Comm.Code Ann. § 3.302 (1968) provides, in pertinent part:
   (a) A holder in due course is a holder who takes the instrument
   (1) for value; *and*
   (2) in good faith; and
   (3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

3. A holder is defined in section 1.201(20):
   "Holder" means a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank.

ment; if payable to bearer it is negotiated by delivery.

(b) An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.

■ The Estrada notes were payable to the order of Lewis and, as order instruments, could be negotiated to River Oaks only by delivery with Lewis' indorsement. *Lawson v. Finance America Private Brands*, 537 S.W.2d 483, 485 (Tex.Civ.App., El Paso 1976, no writ). River Oaks is not in possession of instruments indorsed to it or its order unless the indorsement on the collateral assignment stapled to the notes is so firmly affixed thereto as to become a part thereof. If the signature on the collateral assignment is not an indorsement of the notes, River Oaks is neither a holder nor a holder in due course. Tex.Bus. & Comm. Code Ann. §§ 3.302, 1.201(20), and 3.202(a).

Comment 3 to section 3.202 is the only Code explanation of when an indorsement on a separate instrument is sufficient for negotiation:

3. Subsection (2) follows decisions holding that a purported indorsement on a · mortgage or other separate paper pinned or clipped to an instrument is not sufficient for negotiation. The indorsement must be on the instrument itself or on a paper intended for the purpose which is so firmly affixed to the instrument as to become an extension or part of it. Such a paper is called an allonge.

■ An allonge has been defined as: "[a] piece of paper annexed to a bill of exchange or promissory note, on which to write endorsements for which there is no room on the instrument itself." Black's Law Dictionary (rev. 4th ed. 1968). Historically, when a promissory note was so covered with prior indorsements that no space remained for the indorsement of the last holder, a piece of paper was pasted or fastened by wafer to the bottom of the note to provide space for additional indorsements. *E. g., Bishop v. Chase*, 156 Mo. 158, 56 S.W.

1080 (1900). The majority of decisions under the Uniform Negotiable Instruments Act (N.I.L.),[4] the forerunner of the U.C.C., held that lack of space on the instrument for further indorsements was a necessary predicate for use of an allonge. *See* Annot., 56 A.L.R. 923–24 (1928). There is some authority for the proposition that the Code permits indorsement by allonge only if the instrument is so covered with previous indorsements that convenience or necessity requires additional space for further indorsements. *Tallahassee Bank & Trust Co. v. Raines*, 125 Ga.App. 263, 187 S.E.2d 320, 321 (1972); 2 R. Anderson, Uniform Commercial Code § 3–202:24 at 767 (2d ed. 1971).

We will not pass on that question for two reasons. First, the backs of the Estrada notes are not reproduced in the record, and, although the fact is not contested by River Oaks, we cannot say with certainty that space exists on the notes for Lewis' indorsement. Second, under the facts of this case, the collateral assignment would not be an indorsement of the notes even if the notes were so covered with previous indorsements that use of an allonge would be an absolute necessity. All four of the Estrada notes were transferred by a single collateral assignment bearing a single signature by Lewis. River Oaks argues that this single signature is an indorsement of all four notes. We disagree. The collateral assignment cannot possibly be so firmly affixed to four notes as to become an extension or part of each one. Although the assignment could conceivably be an indorsement of one of the notes, a court could not determine which note the parties intended to indorse.

River Oaks urges this court to adopt the holding of the Colorado Supreme Court in *Lamson v. Commercial Credit Corp.*, 187 Colo. 382, 531 P.2d 966 (1975). In *Lamson*, a special indorsement typed on two legal size sheets of paper was stapled to two checks. This stapling was held to be an adequate method of firmly affixing the in-

---

4. The N.I.L. was enacted in Texas in Tex.Laws 1919, ch. 123. Sections 30, 31, and 32 of the

N.I.L. were combined and reworded into section 3.202 of the Code.

dorsement when it would have been physically impossible to place all of the language of the indorsement on the small checks. The facts in *Lamson* differ significantly from those before this court. In *Lamson*, the transferor of the checks signed a document which was clearly intended to be a special indorsement of the checks. In the case at bar, River Oaks wants this court to construe the signature on a collateral assignment to be an indorsement of four notes. We do not believe that the legal principles announced in *Lamson* are applicable to the facts before this court. The problems inherent in negotiating checks, small in dimension, by a lengthy special indorsement inject policy considerations not present in the case at bar. We are aware of no case, based upon facts substantially similar to those before this court, that has adopted the position taken by River Oaks.

We hold that the signature of Lewis on the single collateral assignment is not an indorsement of the four Estrada notes attached thereto, and, therefore, River Oaks is not a holder in due course of those four notes.

## II.

■■■■ River Oaks argues that even if the collateral assignment is not so firmly affixed to the Estrada notes as to become a part thereof, the rule of incorporation by reference is effective to make River Oaks a holder in due course. The rule of incorporation by reference provides that where two or more instruments, executed contemporaneously or at different times, pertain to the same transaction, the instruments will be read together although they do not expressly refer to each other. *Board of Ins. Comm'rs v. Great Southern Life Ins. Co.*, 150 Tex. 258, 267, 239 S.W.2d 803, 809 (1951). The rule also applies to instruments executed in connection with the same trans-

action when one or more of the instruments are promissory notes. *Pendleton Green Assoc. v. Anchor Sav. Bank*, 520 S.W.2d 579, 584 (Tex.Civ.App.-Corpus Christi 1975, no writ); *Texas State Bank of Austin v. Sharp*, 506 S.W.2d 761, 763 (Tex.Civ.App.-Austin 1974, writ ref'd n. r. e.); Tex.Bus. & Comm.Code Ann. § 3.119.

Although section 3.119 permits the terms of a negotiable instrument to be modified by another written agreement executed as a part of the same transaction,[5] we find no support in the Code for the proposition that a signature on a collateral assignment can serve as an indorsement "on" a series of promissory notes. We are aware of no case decided under the U.C.C. in Texas or any other jurisdiction that has applied the rule of incorporation by reference to the extent urged by River Oaks.

River Oaks relies heavily on the court of civil appeals decision in *First Nat'l Bank of Bowie v. Bell*, 88 S.W.2d 119, 122 (Tex.Civ. App.-Fort Worth 1935, writ dism'd), which held that a written assignment executed in conjunction with the transfer of an unindorsed note was a substantial compliance with the N.I.L. requirement that an indorsement be on the instrument itself or *upon a paper attached thereto*. We do not believe that the *Bowie* decision is a sound construction of the indorsement requirements of the N.I.L., and even if the holding is correct, it is not binding in a case arising under the Code.

Facts similar to those in *Bowie* were presented in *Penny v. Kelley*, 528 S.W.2d 330 (Tex.Civ.App.-Beaumont 1975, no writ). The holder of a note attempted to transfer the note to a bank by including a simple assignment of the note among the documents transferred, but the bank declined to approve the transaction because no indorsement had been made on the note itself.

---

5. Section 3.119 provides:

(a) As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, except that a holder in due course is not affected by any

limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument.

(b) A separate agreement does not affect the negotiability of an instrument.

The court held that the assignment of the note, without indorsement upon the instrument itself, was not in compliance with the negotiation provisions of the Code. 528 S.W.2d at 333.

Courts in other jurisdictions which have dealt with the question have refused to extend the incorporation by reference rule to cover indorsements of promissory notes. In *Security Pac. Nat'l Bank v. Chess*, 58 Cal.App.3d 555, 129 Cal.Rptr. 852 (1976), thirteen notes were transferred by their holder to a bank by a series of written assignments not attached to the notes. Only nine of the notes were indorsed by the assignor. The bank argued that the notes and assignments should be read together as making the bank a holder in due course of the four unindorsed notes. This argument was rejected by the California Court of Appeals:

> This argument confuses transfer with negotiation. The separate assignment is, of course, effective as evidence that the notes were transferred to plaintiff, and plaintiff became the transferee and owner, at least for security purposes.

> But a transferee is not in this situation a holder. Negotiation of an order instrument depends upon indorsement, and indorsement "must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." (§ 3202, subd. (2).) The defect in plaintiff's position is that nothing was written on the four notes by or on behalf of ELC. 129 Cal.Rptr. at 856.

Another California Court of Appeals case, decided under the N.I.L., held that incorporation by reference cases have no bearing on the requirement of negotiable instrument law that an indorsement must be upon the note itself or upon a piece of paper firmly affixed thereto. *Lopez v. Puzina*, 239 Cal.App.2d 708, 49 Cal.Rptr. 122, 125 (1966).

In a case decided under the N.I.L., but after adoption of the U.C.C., the Supreme Court of Maine rejected an incorporation by reference argument:

> . . . Plaintiff argues that the document he signed incorporates the note by reference and is thus an endorsement "on" the note. Although the doctrine of incorporation by reference is commonly used in wills and contracts, we can find no instance in which it exists in the area of endorsements of negotiable instruments. Although Plaintiff's document attempts expressly to incorporate the note, the Plaintiff cites no authority for this usage of the doctrine and we ourselves can find none. This Court is not persuaded that it should extend the doctrine to endorsements of negotiable instruments. Adoption of the incorporation doctrine could well undermine the precise mandate of N.I.L. section 31 and the smooth functioning of the negotiation process itself. No cogent reasons exist for changing the long-held requirement of attachment of an endorsement to the instrument. In fact, this requirement is continued by the even stricter language of the N.I.L.'s successor, the U.C.C., in 11 M.R.S.A. § 3–202(2). That section demands that an endorsement be "firmly affixed" to the instrument, as opposed to merely "attached". *Hills v. Gardiner Sav. Institution*, 309 A.2d 877, 880–81 (Me.1973).

We agree with the courts of California and Maine that no cogent reasons exist for extending the incorporation by reference doctrine to indorsements of negotiable instruments. "An instrument's usefulness in negotiation or transfer can only be evidenced by looking at it or any attachments and determining if any endorsements of any kind exist." *Gardiner Sav., supra*, at 880. Reference to collateral instruments to determine the ownership of or liability on a promissory note would necessarily impede the use of negotiable instruments as a commercial medium of exchange. We reject River Oaks' argument that it is a holder in due course by the rule of incorporation by reference.

### III.

Our decision today does not contravene the mandate that the U.C.C. is to be

728

liberally construed and applied to promote its underlying purpose to simplify, clarify and modernize the law governing commercial transactions. Tex.Bus. & Comm.Code Ann. § 1.102(b)(1). Indorsement by allonge has never been considered as prudent or desirable as an indorsement on the instrument itself. *See, e. g., Clark v. Thompson,* 194 Ala. 504, 69 So. 925 (1915). Section 31 of the N.I.L. allowed an indorsement to be written upon a paper "attached" to the negotiable instrument; section 3.202 of the Code requires that the paper be "so firmly affixed" to the instrument "as to become a part thereof." This change in wording evidences a clear intent by the Code draftsmen to restrict, rather than expand, the use of allonges.

River Oaks had the specifically enforceable right to have the unqualified indorsement of Lewis on the Estrada notes. Tex.Bus. & Comm.Code Ann. § 3.201(c). For reasons unknown to this court, River Oaks had Lewis sign only the collateral assignment. While this procedure may be common in the banking community, we fail to see how the simple process of having a transferor indorse his notes as well as the assignment would impede the negotiation of commercial paper. Neglecting to acquire the transferor's indorsement on an instrument introduces a needless element of uncertainty into commercial transactions which should be consummated with utmost care. In fact, use of an allonge would generally create a fact issue as to whether the paper was so firmly affixed to the instrument as to become a part thereof, thus precluding summary judgment for the instrument's owner. Tex.R.Civ.P. 166–A(c).

Our decision does not prevent River Oaks from recovering on the notes. Since River Oaks is neither a holder nor a holder in due course, it is not aided by any presumption that it is entitled to recover. *Lawson v. Finance America Private Brands,*

537 S.W.2d 483, 485 (Tex.Civ.App.-El Paso 1976, no writ); *see Whittenburg v. Cessna Fin. Corp.,* 536 S.W.2d 444, 446 (Tex.Civ. App.-Houston [14th Dist.] 1976, writ ref'd n. r. e.); *Carter v. DeJarnatt,* 523 S.W.2d 88, 91 (Tex.Civ.App.-Texarkana 1975, writ ref'd n. r. e.); Tex.Bus. & Comm.Code Ann. § 3.307(b). The collateral assignment gives River Oaks the right to bring suit on the notes as an assignee. However, River Oaks, as a mere assignee, took the notes subject to all defenses and equities to which the notes were subject in the hands of Lewis. Tex.Bus. & Comm.Code Ann. §§ 3.201(a), 3.306(2); *Tallahassee Bank & Trust Co. v. Raines,* 125 Ga.App. 263, 187 S.E.2d 320, 321 (1972); 2 R. Anderson, Uniform Commercial Code § 3–201:9 (2d ed. 1971). Therefore, on remand, River Oaks can sue to recover the face value of the four notes, and Estrada can introduce evidence of his alleged offsets to those notes.

It should be noted that a holder in due course may transfer his rights as such under the "shelter" provision of section 3.201(a).[6] That provision apparently applies to all transferees regardless of whether the transferees are holders. There is no proof in the record that Lewis was a holder in due course, but a payee may become a holder in due course if he satisfies all of the requirements. Tex.Bus. & Comm. Code Ann. § 3.302(b), § 3.302, Comment 2. If River Oaks can prove that Lewis was in all respects a holder in due course, River Oaks can assert the rights of a holder in due course.

IV.

Estrada claims that the trial court erred in failing to grant his motion for summary judgment, because the judgment entered against Lewis on the 1971 note is a complete offset to the four Estrada notes assigned to River Oaks. Our determination that River Oaks was not enti-

**6.** Section 3.201(a) provides:
(a) Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality

affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.

tled to summary judgment has no bearing on whether Estrada's motion should have been granted. When parties file opposing motions for summary judgment, each movant has the burden to prove that he is entitled to judgment as a matter of law, and neither party can prevail because of the failure of the other to discharge his burden. *Miller & Freeman Ford v. Greater Houston Bank,* 544 S.W.2d 925, 926 (Tex.Sup.1976); *Tigner v. First Nat'l Bank of Angleton,* 153 Tex. 69, 74, 264 S.W.2d 85, 87 (1954). Estrada had the burden of producing competent summary judgment evidence of his alleged offset. Tex.Bus. & Comm. Code Ann. § 3.307(b); *Whittenburg v. Cessna Fin. Corp.,* 536 S.W.2d 444, 445 (Tex.Civ.App.-Houston [14th Dist.] 1976, writ ref'd n. r. e.).

Estrada contends that he signed the 1971 note merely as a surety ("accommodation party" under the U.C.C.), and that since he paid Jacinto City Bank, he has a right of recourse against Lewis (the "accommodated party") under section 3.415(e) of the Code:

> (e) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party.

■■■ An accommodation party is liable in the capacity in which he has signed the instrument. Tex.Bus. & Comm.Code Ann. § 3.415(b). The copy of the 1971 note in the record reflects that Lewis and Estrada signed the note as co-makers, which subjected the makers to joint and several liability on the obligation. Tex.Bus. & Comm. Code Ann. § 3.118(5); *Riley v. First State Bank, Spearman,* 469 S.W.2d 812, 817 (Tex. Civ.App.-Amarillo 1971, writ ref'd n. r. e.); Clark, *Suretyship in the Uniform Commercial Code,* 46 Tex.L.Rev. 453, 455 (1968). If Estrada signed the note as a surety, nothing on the note itself indicates that fact. Except as against a holder in due course who took the instrument without notice of the accommodation, Estrada could use parol evidence against any person to prove his suretyship status. Tex.Bus. & Comm.Code Ann. § 3.415(c); White & Summers, *supra,*

§ 13–13 at 430; *see* Peters, *Suretyship Under Article 3 of the Uniform Commercial Code,* 77 Yale L.J. 833 (1968).

As enunciated by the supreme court in *Darden v. Harrison,* 511 S.W.2d 925, 928 (Tex.Sup.1974):

> The essential element that the party claiming accommodation status must prove is that the party claimed to be accommodated received the signature of the surety *for the sole purpose of obtaining credit thereby,* under an agreement that the accommodated party is principally responsible for payment at maturity, or that the instrument was executed for a limited purpose.

■■■ The 1975 judgment for Estrada against Lewis does not establish that Estrada signed the 1971 note as an accommodation party. No findings of fact or conclusions of law were made, and the 1975 judgment does not recite that Estrada was a surety or describe any evidence offered by Estrada to prove his accommodation status. The 1975 judgment merely refers to a promissory note, not clearly identified in the judgment, and approves an agreement between the parties regarding liability on that note.

■■■ Moreover, River Oaks was not a party to the 1971 note or the 1975 judgment and is not bound by factual or legal determinations possibly implicit in that judgment. It is a rule of universal application that the rights of no one shall be concluded by a judgment rendered in a suit to which he was not a party. *Read v. Allen,* 58 Tex. 380, 382 (1883). We hold that, as against River Oaks, Estrada failed to discharge his burden to prove that no material fact issues existed and that he was entitled to judgment as a matter of law. Therefore, his motion for summary judgment was properly denied. Tex.R.Civ.P. 166–A(c).

The judgment of the trial court granting summary judgment for River Oaks is reversed and remanded. The failure of the trial court to grant summary judgment for Estrada is affirmed.