**COMMERCIAL CREDIT CORPORATION, a Maryland Corporation, Plaintiff-Appellant,**

v.

**UNIVERSITY NATIONAL BANK OF FORT COLLINS, Defendant-Appellee.**

No. 77–1115.

United States Court of Appeals, Tenth Circuit.

Argued Aug. 8, 1978.

Decided Jan. 18, 1979.

**850**

Donald K. Bain of Holme Roberts & Owen, Denver, Colo. (with Jack L. Richtsmeier and David M. Arnolds, Denver, Colo., on the brief), for plaintiff-appellant.

Mark L. Korb of March, March & Myatt, Fort Collins, Colo., for defendant-appellee.

Before HOLLOWAY, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Pursuant to a floorplan financing agreement, Commercial Credit Corporation (CCC) wrote two checks to its customer, Rauch Motor Company (Rauch). Rauch endorsed the checks in blank and deposited them in its checking account at University National Bank of Fort Collins (the Bank). The Bank credited the checks to Rauch's account and forwarded them to CCC's bank for collection. The latter returned them to the Bank with a notation on each indicating that payment had been ordered stopped. The Bank then charged Rauch's account in the amount of the checks, leaving the account overdrawn. To reduce the substantial overdraft balance, one Lamson borrowed money from the Bank and deposited it in Rauch's account. The Bank retained the two checks, taking no action with reference to them and receiving no requests from either CCC or Rauch concerning them, for a considerable period of time. Thereafter, Lamson defaulted on the loan. The Bank brought an action to enforce the loan and, in connection with settlement negotiations with Lamson, assigned the two checks to him.

Lamson then brought an action in the state courts of Colorado against CCC, seeking to recover the amount of the checks, with interest. That action was ultimately successful, the Supreme Court of Colorado holding that Lamson was a holder (although not in due course) and that since CCC had failed to establish an adequate defense at trial, he was entitled to payment upon production of the instruments. *Lamson v. Commercial Credit Corp.*, 187 Colo. 382, 531 P.2d 966 (1975).

CCC then brought this diversity action against the Bank, claiming the Bank's transfer of the checks to Lamson was wrongful and seeking damages in an amount equal to what CCC had been required to pay Lamson. The trial court concluded that the Bank was entitled to summary judgment. CCC appealed. We are bound to apply Colorado law, which is no small task since there is none clearly on point.

I.

CCC's first theory of recovery is that the Bank owed it duties of good faith and ordinary care in transferring a check to a third party, and that these duties were breached when the Bank, having no right to the checks and knowing payment on them had been stopped, transferred the checks to Lamson. We agree with the court below that the Bank breached no duty actionable by CCC under Colorado law.

"Good faith" is defined as "honesty in fact" under the provisions of the Colorado

Uniform Commercial Code. Colo.Rev.Stat. § 4–1–201(19) (1973). "Ordinary care" is used in its ordinary tort sense. Official Comment 4 to Colo.Rev.Stat. § 4–4–103 (1973). Thus, the Bank would have breached the former duty only if it dealt dishonestly in transferring the checks to Lamson, and the latter, only if a reasonable holder in the Bank's position, in the exercise of ordinary care, would not have transferred the checks.

■ CCC suggests that, once the overdraft balance was removed, the Bank lost any interest it had in the checks and ownership of the checks reverted to Rauch. CCC believes the Bank "violated its duty to act with ordinary care when it transferred the checks without their owner's permission." Appellant's Brief at 7. Without necessarily agreeing that Rauch was legally the owner of the checks, it is enough to point out that CCC, as merely the drawer of the instruments, cannot recover from the Bank on a wrong done Rauch.

■ It is also claimed the transfers were not in good faith because the Bank "knew it did not own the checks and it knew that [CCC] claimed them." Appellant's Brief at 7–8. The Bank was a holder of the checks at the time of transfer (regardless of who was the owner), and thus had the right to transfer and negotiate them. Colo.Rev. Stat. §§ 4–1–201(20), 4–3–301 (1973). Therefore, it is of no moment whether the Bank did not "own" the checks or whether it *knew* it did not. The assertion that the Bank knew that CCC had "claimed" the checks is based exclusively on the mere fact that the Bank was aware CCC had ordered payment stopped. However, the Bank's president stated in his uncontroverted affidavit that banking usage treats the drawer as obtaining no right to return of the check merely because it is dishonored.[1] He further stated that no demand for return of the checks (which *would* give notice the drawer was asserting some defense or claim to the checks) was made by CCC.

The Bank president's affidavit sought to show that the Bank was dealing in good faith and in the exercise of ordinary care when it transferred the checks to Lamson. CCC submitted no counter-affidavits, but merely relied on the general allegations of its complaint that these duties were breached by the Bank. CCC thus failed to demonstrate the existence of specific facts at variance with the president's statements and therefore the existence of a material, factual dispute on the issue of whether the Bank had breached its duties to exercise ordinary care and to deal in good faith. Summary judgment against it on this claim was therefore appropriate. Fed.R.Civ.P. 56(e); *Bruce v. Martin-Marietta Corp.,* 544 F.2d 442, 445 (10th Cir. 1976); *Whitfield v. Gangas,* 507 F.2d 880, 882 (10th Cir. 1974).[2]

## II.

CCC's second major theory is that the Bank's transfer of the checks to Lamson constituted conversion.

■ An action for conversion of negotiable instruments is recognized by Colorado in three situations:

(a) [when] a drawee to whom it is delivered for acceptance refuses to return it on demand; or

(b) [when] any person to whom it is delivered for payment refuses on demand either to pay or to return it; or

---

1. The general law on this point is consistent with the position taken by the Bank's president:

> Stopping payment does not discharge the liability of the drawer of a check or other bill to the payee or other holder. Where payment has been stopped by the drawer, the relation between the drawer and the payee becomes the same as if the instrument had been dishonored and notice thereof given to the drawer. Hence, his conditional liability is changed to one free from the condition and his situation is like that of the maker of a promissory note due on demand. He is thus liable on the instrument if he has no sufficient defense. . . .

11 Am.Jur.2d, *Bills and Notes,* § 590 (1963).

2. In view of our decision that summary judgment for the Bank was warranted on the issues of ordinary care and good faith, we need not reach the question of whether a depositary bank is directly liable to the drawer of a negotiable instrument for subsequent negotiation of that instrument as a holder.

(c) [when] it is paid on a forged indorsement.

Colo.Rev.Stat. § 4–3–419(1) (1973). None of these situations characterize this case. However, it has been recognized that the three listed situations are not exclusive. *In re Quantum Development Corp.*, 397 F.Supp. 329, 337 (D.V.I.1975), *aff'd*, 534 F.2d 532 (3d Cir.), *cert. denied*, 429 U.S. 827, 97 S.Ct. 84, 50 L.Ed.2d 90 (1976); *Berkheimers, Inc. v. Citizens Valley Bank*, 270 Or. 807, 529 P.2d 903 (1974); *Salsman v. National Community Bank*, 102 N.J.Super. 482, 246 A.2d 162, 168 (1968), *aff'd*, 105 N.J.Super. 164, 251 A.2d 460 (App.Div.1969) (per curiam); 2 R. Anderson, *Uniform Commercial Code* § 3–419–4 (2d ed. 1971). In view of Colorado law's provision for the continued applicability of common law rules not displaced by the particular provisions of its UCC,[3] we believe that Colorado would follow the general rule. Thus, "[t]he general principles of law relating to the conversion of property remain in force. Accordingly, there is a conversion of a negotiable instrument when any person unlawfully takes, detains, or refuses to surrender a negotiable instrument belonging to another person." 2 R. Anderson, *Uniform Commercial Code* § 3–419–4 (2d ed. 1971) (footnotes omitted). More generally, a conversion consists of the wrongful deprivation of property which the plaintiff is entitled to possess. 18 Am.Jur.2d, *Conversion*, § 25 (1965).[4]

A negotiable instrument is the property of the holder or payee, not the drawer. *Stone & Webster Engineering Co. v. First National Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358 (1962); *Life Insurance. Co. of Virginia v. Snyder*, 141 N.J.Super. 539, 358 A.2d 859, 862 (Dist.Ct.1976).

3. Colo.Rev.Stat. § 4–1–103 (1973).

4. Notwithstanding agreement that Uniform Commercial Code § 3–419(1) is not exclusive and the seemingly broad scope of the statements concerning what constitutes conversion, there has not been extensive judicial expansion of the circumstances recognized as constituting conversion of negotiable instruments. One commentator has identified a single additional category of cases where conversion will be found—namely, cases where payment is made

Since the Bank was a holder of the checks it, not CCC, had a legal right to possess them at the time it transferred them to Lamson. The Bank was legally entitled as a holder to transfer or negotiate the checks. Colo.Rev.Stat. § 4–3–301 (1973). Its transferring the checks to Lamson could not be a "wrongful" or "unlawful" act, which is a necessary element of proof in an action for conversion. This is true even if, as CCC alleged, Rauch had obtained the checks through "fraud, misrepresentation or mistake." Record, vol. 2, at 2–3. Such a showing may constitute a defense to payment,[5] but it would not establish the right to immediate possession, a necessary prerequisite to establishing a claim for conversion.

AFFIRMED.

under an unauthorized signature. 2 R. Anderson, *Uniform Commercial Code*, § 3–419–4 (2d ed. 1971).

5. *See* Colo.Rev.Stat. § 4–3–307(2) and § 4–3–306 (1973). CCC failed to establish any such defense to payment when Lamson sought to enforce payment as holder of the checks in the prior state litigation. *See Lamson v. Commercial Credit Corp.*, 187 Colo. 382, 531 P.2d 966, 968–69 (1975).