**NEWPORT STEEL CORPORATION, a Kentucky corporation, Plaintiff,**

v.

**C.G. THOMPSON, Jr., Defendant.**

**Civ. A. No. 89–F–1808.**

United States District Court, D. Colorado.

Oct. 1, 1990.

J. Kemper Will, Molly Summerville, Englewood, Colo., for plaintiff.

John F. Stavely, Boulder, Colo., for defendant Peak Oilfield Supply Corp.

Daniel W. Carr, Dill and Dill, P.C., Denver, Colo., for defendant C.G. (Chet) Thompson, Jr.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the court on plaintiff's motion for summary judgment and defendant's motion to dismiss or, in the alternative, motion for summary judgment. The court has determined that the motions before the court are best considered as cross motions for summary judgment. Jurisdiction is based on 28 U.S.C. § 1332. For the reasons below, defendant's motion for summary judgment is hereby GRANTED.

### I.

Newport Steel Corporation ("Newport") manufactures steel pipe for drilling operations. C.G. Thompson ("Thompson") serves as president of Peak Oilfield Supply Corporation ("Peak"). During 1987, Peak ordered some steel piping from Newport. The steel piping was for the intended use and benefit of Martin Exploration Company ("Martin").

The parties agreed that Newport would ship the piping directly to Martin. Peak in turn would bill Martin for the piping and tender the amount by check payable to Newport. Several shipments were made to Martin, who subsequently paid Newport directly. On March 26, 1987, Peak placed a purchase order with Newport to ship some piping to Martin. On August 24, 1987, however, Martin sent a check to Peak, instead of Newport, for the delivered materials.

Thompson deposited the received check for $228,842.35 into Peak's account. Newport sent an invoice to Peak on September 27, 1987, for $202,367.11. The difference in price reflects Peak's margin of profit, tax, and shipping costs. Peak did not transmit the entire balance for the piping delivered to Martin to Newport. Peak made several partial payments to Newport totalling $71,000.00, but an unpaid balance remained.

On November 6, 1989, Newport filed suit against Newport and Thompson for the outstanding balance. On November 28, 1989, on the parties' stipulation, the court ordered that Thompson be dismissed without prejudice. However, Newport filed an amended complaint renaming Thompson as a party-defendant on July 6, 1990. Three claims for relief were brought: breach of contract, conversion, and unjust enrichment.

After plaintiff filed for partial summary judgment on liability on July 16, 1990, Peak accepted an offer of judgment for $103,391.27. Judgment was entered on August 15, 1990. Newport's claim for the remainder of the balance is still outstanding against Thompson.

Based on newly-configured posture of the case, Thompson moved for dismissal or summary judgment on August 27, 1990. The court considers only the motions for summary judgment.

### II.

Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Willner v. Budig,* 848 F.2d 1032, 1033–34 (10th Cir.), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989). The plain language of Rule 56(c) mandates the entry of summary judgment against the party who fails to make a showing that is sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion, and resolve all doubts in favor of the existence of triable issues of fact. *World of Sleep, Inc. v. La–Z–Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.), *cert. denied,* 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985); *Ross v. Hilltop Rehabilitation Hosp.,* 676 F.Supp. 1528 (D.Colo.1987). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ In a motion for summary judgment, movant's initial burden is slight. In its response, the nonmovant's burden is generally higher. In *Celotex,* the Supreme Court held that the language of Rule 56(c) does *not* require the moving party to show an *absence* of issues of material fact in order to be awarded summary judgment. *Id.,* 477 U.S. at 322, 106 S.Ct. at 2552. That is, Rule 56 does not require the movant to *negate* the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552. The movant merely has the initial responsibility of informing the court of the basis for the motion, and identifying those portions of the record it believes show a lack of genuine issue. *Id.* This burden is discharged merely by pointing out to the court there is an absence of evidence to support the nonmovant's case. *Id.* at 325, 106 S.Ct. at 2553. On the other hand, the nonmovant has the burden of showing that there *are* issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552–53. In order to dispute the facts demonstrated by the evidence of the movant, the nonmovant must also offer evidence, and cannot rely on mere allegations. *R–G Denver, Ltd. v. First City Holdings of Colorado, Inc.,* 789 F.2d 1469 (10th Cir.1986). Conclusory allegations will not suffice to establish an issue of fact. *McVay v. Western Plains Service Corp.,* 823 F.2d 1395, 1398 (10th Cir.1987). When responding to a motion for summary judgment, the nonmovant must do more than provide "some evidence" in order to resist the motion. In *Liberty Lobby,* the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. 477 U.S. at 249–50, 106 S.Ct. at 2510–11. In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of the evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

█ Generally, motions for summary judgment are made by defendant. In that case, defendant must meet its initial responsibility by demonstrating the absence of sufficient evidence necessary to establish all the essential elements of the plaintiff's claims. Plaintiff must then go beyond the pleadings and designate specific facts showing that there are genuine issues for trial on every element challenged by the motion. *Willner,* 848 F.2d at 1035. In sum, the issue for the court is whether sufficient evidence exists in the pretrial record to allow the plaintiff to win at trial. *See also,* Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183 (1987).

### III.

█ Newport contends that it is entitled to relief against Thompson under a theory of conversion. In general, conversion consists of the wrongful deprivation of property in which the plaintiff is entitled to possess. *Commercial Credit Corp. v. University Nat'l Bank,* 590 F.2d 849, 852 (10th Cir.1979). Newport claims that when Thompson deposited Martin's check into Peak's account, he converted the funds for an impermissible use.

Since this action is based in diversity jurisdiction, the court is bound to apply Colorado state law under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Inryco, Inc. v. CGR Bldg. Sys., Inc.,* 780 F.2d 879, 881 (10th Cir.1986). As such, under Colorado law, if

a conversion occurred, it was of a negotiable instrument, not money. Colorado Revised Statute § 4–3–104 provides that a check is a negotiable instrument. Colo. Rev.Stat. § 4–3–104(2)(b) (1973); *see also Van Buskirk v. State Bank,* 35 Colo. 142, 83 P. 778 (1905). As Peak deposited a check drawn by Martin, (Plaintiff's Ex. 2 in Motion for Partial Summary Judgment and Deposition of Thompson at 12), a negotiable instrument, not money, is at issue.[1]

The relevant statute for such instruments is Colorado Revised Statute § 4–3–419. It provides, in pertinent part,

"(1) An instrument is converted when:

(a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or

(b) Any person to whom it is delivered for payment refuses on demand either to pay or return it; or

(c) It is paid on a forged indorsement."

Colo.Rev.Stat. § 4–3–419(1) (1973).

Subsection (a) deals with conversion by a "drawee." The drawee of an instrument is a bank, not the payee, Peak. *See* Colo.Rev. Stat. § 4–3–110(1)(a) and (b) (1973). Therefore, this subsection cannot be the basis for a conversion claim.

Subsection (b) seems to encompass more than just a bank. However, it indicates that the claim for conversion lies against those to whom the instrument is *delivered for payment.* That signifies the payor bank, not the payee, Peak. *See* Colo.Rev. Stat. § 4–4–105(b) (1973). Hence, Newport cannot base a conversion claim under this code section.

Subsection (c) does not pertain. No allegations have been made that Martin's check was paid as a result of a forgery.

Plaintiff also appears to rely on general common law principles to establish a ground for conversion. This is legitimate as the common law is not displaced by provisions of the Uniform Commercial Code ("UCC"). Colo.Rev.Stat. § 4–1–103 (1973); *Commercial Credit,* 590 F.2d at 852. Under the common law, a negotiable

instrument has been converted when a person unlawfully takes, detains, or refuses to surrender a negotiable instrument belonging to another. *Commercial Credit,* 590 F.2d at 852. Thompson did not violate this precept. The check Martin delivered to Peak did not "belong" to Newport. Newport may have been owed the money that the check backed. However, since the check was payable to the order of Peak, it belonged to it, not Newport. Colo.Rev. Stat. § 4–3–110 (1973). Hence, no claim for conversion may lie under the common law.

Because the cited UCC provisions and the common law do not provide a basis for relief, as a matter of law, Newport's claim for conversion against Thompson must fall.

## IV.

In Colorado, contract law precludes a suit against Thompson as an individual for a contract entered into between Newport and Peak. *Bonfils v. McDonald,* 84 Colo. 325, 332–333, 270 P. 650, 653 (Colo. 1928). Nevertheless, Newport alleges that Thompson, as President of Peak, should be liable for the breach of contract and unjust enrichment claims under an "alter ego" theory.

A corporation is a separate entity distinct from the individuals comprising it. *United States v. Van Diviner,* 822 F.2d 960, 963 (10th Cir.1987). Personal liability cannot be imposed on an officer of a corporation merely because that individual is serving in such a capacity. *Id.* Using the alter ego doctrine however, a court may pierce the corporate veil and hold an individual personally liable if recognizing a separate corporate status would work an injustice. *McKinney v. Gannett Co.,* 817 F.2d 659, 666 (10th Cir.1987); *see also* Krendl & Krendl, *Piercing the Corporate Veil: Focusing the Inquiry,* 55 Den.L.J. 1 (1978).

While no one factor controls the analysis, a variety of considerations are used to determine whether the corporate form should be disregarded. *Geringer v.*

---

**1.** *Johnson v. Studholme,* 619 F.Supp. 1347, 1350 (D.Colo.1985), *aff'd,* 833 F.2d 908 (10th Cir. 1987), which holds that no action lies for the conversion of money, is therefore inapplicable.

*Wildhorn Ranch, Inc.*, 706 F.Supp. 1442, 1449 (D.Colo.1988). These include (1) whether the corporation is operated as a separate entity, (2) commingling of funds and other assets, (3) failure to maintain adequate corporate records, (4) the nature of the corporation's ownership and control, (5) absence of corporate assets and under-capitalization, (6) use of the corporation as a mere shell, (7) disregard of legal formalities, and (8) diversion of the corporation's funds or assets to noncorporate uses. *Van Diviner*, 822 F.2d at 965.

▮ Upon review of the record, the court is convinced that the corporate form should not be disregarded. First, the evidence suggests that the corporation did operate as a separate entity. Peak had several officers other than Thompson himself, such as E.E. Altschuler, Earl Cohen, and Fidel Nebor. (Deposition of Thompson at 47–49). Moreover, a separate corporate structure was in existence at the time the pertinent transaction occurred. (Deposition of Thompson at 48–50.) Second, there is no suggestion that Thompson ever commingled any of the corporation's funds or assets with his own. Third, Thompson did not fail to maintain adequate corporate records or minutes. (Deposition of Thompson at 49–50). Annual meetings were held with records kept on the events. While corporate documentation may not have been attended to diligently, they were not so neglected as to consider Peak a sham corporation. (Deposition of Thompson at 49–51). Fourth, the nature of the corporation's ownership and control does not indicate that Thompson used Peak as a mere instrumentality for his own affairs. Although the record does not reflect the ownership structure of Peak, Thompson did not so dominate and control the corporation as to consider Peak an alter ego. *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1264 (10th Cir.1989); *Geringer*, 706 F.Supp. at 1449. Fifth, the alleged undercapitalization is not enough of a reason to disregard the corporate entity. The mere fact that Peak may have been suffering from a "cash crunch" does not support a ruling that Thompson abused the corporate privilege and should be held per-sonally liable. *Lowell*, 878 F.2d at 1263. Moreover, inadequate capitalization alone does not lead to a disregard of the corporate entity. R. Clark, Corporate Law, § 2.4.1, at 74 (1986). Sixth, plaintiff points to no facts suggesting that Thompson used Peak as a mere shell. Seventh, there is no evidence in the record indicating that the legal formalities necessary to maintain corporate status were ignored. Finally, nothing intimates that Thompson diverted corporate funds or assets. *Van Diviner*, 822 F.2d at 965.

The record simply does not suggest that the corporate structure was used so improperly that the continued recognition of the corporation as a separate entity would be unfair. *Lowell*, 878 F.2d at 1262. The record does not reflect any intent by Thompson to use the corporate entity as a mere instrumentality to transact his own affairs, to defeat or evade important legislative policy, or to perpetrate a fraud or wrong. *Id.; United States v. Excellair, Inc.*, 637 F.Supp. 1377, 1387 (D.Colo.1986). While Thompson may not have scrupulously maintained the distinction between himself and the corporation, a corporate president is not personally liable for a corporation's breach of contract or unjust enrichment absent a threatened injustice commanding the invocation of this equitable remedy. *Van Diviner*, 822 F.2d at 965; *McKinney*, 817 F.2d at 666. As a matter of law, defendant is entitled to judgment in his favor.

#### V.

In accordance with the foregoing, it is hereby ORDERED:

1) Plaintiff's motion for summary judgment is hereby DENIED.

2) Defendant's motion for summary judgment is hereby GRANTED.

The clerk of the court is DIRECTED to enter judgment in favor of the defendant and against the plaintiff. The defendant is to recover costs.