**MODERN AERO SALES, INC., Appellant,**

v.

**WINZEN RESEARCH, INC., Appellee.**

No. 17941.

Court of Civil Appeals of Texas, Dallas.

Sept. 28, 1972.

Rehearing Denied Oct. 26, 1972.

H. Dudley Chambers, John B. Kyle, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellant.

Molly Bartholow, Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellee.

GUITTARD, Justice.

Modern Aero Sales, Inc. sued Winzen Research, Inc. for damages for breach of an option agreement for purchase of an aircraft. The trial court, sitting without a jury, denied recovery on the ground that plaintiff Modern Aero failed to make a valid tender of the purchase price, and plaintiff appeals. Our questions are (1) whether a bank draft was a means of payment "current in the ordinary course of business" under the Uniform Commercial Code, § 2.511(b),[1] V.T.C.A., (2) whether the seller's rejection of such draft and demand for legal tender had the effect of extending the time of payment for a reasonable time after the purchaser received such demand and (3) whether further tender was excused by statements of the seller to purchaser's agent indicating unwillingness to accept payment on grounds other than the medium of payment. We answer all these questions in the affirmative, and, consequently, reverse and render judgment for the purchaser.

The material facts are undisputed. Defendant Winzen Research, Inc. of Minneapolis had a contract with University Corporation for Atmospheric Research ("UCAR") to perform certain services, including operation of a balloon tracking facility near Palestine, Texas. This contract gave UCAR an option to purchase from Winzen a certain aircraft registered in the name of D. R. Williams, vice-president of

---

1. Tex.Bus. & Com.Code Ann. § 2.511(b) (1968):

"Tender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender and gives any extension of time reasonably necessary to procure it."

Winzen. The contract and the option ended May 15, 1970. On May 11 UCAR awarded a new contract for these services to plaintiff Modern Aero Sales, Inc. of Dallas and assigned the option to Modern Aero in consideration of a credit of $4,000 on the new contract.

On May 12 Modern Aero attempted to exercise the option by mailing to Winzen a letter with an envelope draft containing a bill of sale. The draft was signed by an officer of Modern Aero, and directed National Bank of Commerce of Dallas to pay to the order of D. R. Williams $8,161.03 for the aircraft, described by make, model, registration number and serial number. The same description was used in the enclosed bill of sale, which was prepared for the signature of D. R. Williams on a form approved by the Federal Aeronautics Administration.

This letter and draft were received by Williams in Winzen's office in Minneapolis on May 14. He responded on the same day by sending to Modern Aero by ordinary mail a letter as follows:

> "We are returning herewith the contents of your letter of May 12th. We are not familiar with your envelope draft, and our attorney advises it is not legal tender.
>
> "If a timely legal tender is presented for the exercise of the purchase option on the Cessna 206 N 8063Z, we will execute and deliver a bill of sale."

This letter reached Modern Aero in Dallas on May 16. On the same day Winzen sent a pilot to Dallas to pick up the aircraft, which had been delivered to Modern Aero, but Modern Aero refused to release it on the ground that the option had been exercised.

■ The trial court found that tender of the envelope draft "was not a tender made by any means or in any way current in the ordinary course of business." Plaintiff contends that this finding is contrary to the undisputed evidence. We agree. Harold Weiser, an officer of Modern Aero, testified that Modern Aero was in the business of buying and selling aircraft, among other businesses, and that such drafts were frequently used in sales of aircraft. Louie Robinson, vice-president of National Bank of Commerce, testified that Modern Aero had maintained a continuing line of credit for purchase of aircraft at his bank since 1965, and that the draft in question, if presented for payment, would have been honored. He had frequently seen similar drafts drawn by Modern Aero. According to Robinson, the envelope draft was a method used in ordinary course of business by his bank and other banks for simultaneous transfer of title and disbursement of funds when documents needed to be checked. In fact, he said that the envelope draft was the only method in normal use for transfer of title to aircraft. Defendant presented no rebutting evidence on this point.

■ Defendant argues that the envelope draft was not a means or manner of payment "current in the ordinary course of business" because it had not previously been used in business transacted between defendant and plaintiff and was not familiar to defendant, which was not in the business of buying and selling aircraft. We do not construe this statutory language as restricted to the business of the parties in question or to previous dealings between them. Neither do we construe it as limited to a common-law "custom," which is binding only on parties who contract with knowledge of it."[2] The transaction involved was

---

**2.** Consequently, we regard as inapplicable decisions cited by defendant to the effect that a custom of insurance companies to pay judgments by draft does not make delivery of such a draft legal tender. See Baucum v. Great American Ins. Co., 370 S.W.2d 863 (Tex.Sup.1963); Dunn v. Ligon, 430 S.W.2d 704 (Tex. Civ.App., Corpus Christi 1968, no writ); Home Ins. Indem. Co. v. Gutierrez, 409 S.W.2d 450 (Tex.Civ.App., Corpus Christi 1968, writ ref'd, n. r. e.).

sale of an aircraft, and in this context we interpret "ordinary course of business" to mean the ordinary course of business of selling aircraft. The seller's ignorance of practices in that business is not controlling. The purpose of § 2.511(b) is avoidance of commercial surprise at the time of performance.[3] This purpose would be defeated, at least in part, if a purchaser who relies on a means of payment current in the ordinary course of the business involved does not discover until after time for tender has expired that the seller is unwilling to accept payment by that means because he is ignorant of the current business practices. Our construction imposes no hardship on the seller, since § 2.511(b) preserves his right to demand payment in legal tender, although it requires him in that event to give "any extension of time reasonably necessary to procure it."

■ However, we cannot agree with plaintiff's further contention that defendant failed to grant the extension required by the statute and that such failure excused any further tender. Although defendant's letter of May 14 did not expressly grant such an extension or specify any time, such an extension is necessarily implied from the statement: "If a timely legal tender is presented for exercise of the purchase option * * * we will execute and deliver a bill of sale." This language can be construed only as giving plaintiff a reasonable time after receipt of the letter to make a legal tender. The trial court found that a reasonable time for plaintiff to have procured and made a legal tender was the period from Saturday, May 16, to and including Tuesday, May 19, since the banks were closed on Saturday and Sunday. We accept this finding as establishing the period of extension allowed.

The next question is whether plaintiff's failure to make a legal tender by May 19 is excused by defendant's conduct. On this point there is some conflict in the testimony, but none we find to be material.

Weiser testified that as soon as the bank opened on Monday he purchased from Hampton State Bank a cashier's check payable to D. R. Williams and delivered it to a pilot, Richard Morrison, with instructions to fly to Minneapolis, present the cashier's check to Williams, and obtain his signature on the bill of sale. Morrison testified that on the same day, in accordance with Weiser's instructions, he took the cashier's check and bill of sale, flew to Minneapolis, and arrived there between 2:00 and 3:00 in the afternoon. He telephoned Winzen's office and asked to talk to Williams, but he was advised that Williams was out and would be back the next day. On the following morning, May 19, he called again and talked with Williams. Morrison testified he told Williams he had a cashier's check for him and a bill of sale for him to sign, and Williams then "told me it was too late, and not to come down." Morrison then got in his airplane and came back to Dallas.

According to Williams' testimony concerning this conversation, Morrison said that he had a "check" from Modern Aero, and Williams responded that the option had expired on the previous Friday and that additional costs had been incurred, including insurance on the airplane and the expense of sending a pilot to Dallas on the previous Saturday to pick it up. Williams testified that Morrison told him he knew nothing about that, but had only been instructed to deliver the check, and that he told Morrison that if that was all he had it would do no good to come over. Williams did not know the amount of the extra costs, but said he told Morrison their general nature. He did not recall what kind of check Morrison said he had.

■ The trial court found that in the telephone conversation with Morrison on May 19, Williams stated that Winzen "would not accept tender of the said check for the reasons that plaintiff still was not making legal tender, that the purchase op-

3. Tex.Bus. & Com.Code Ann. § 2.511, Comment 3 (1968).

tion had expired on May 15, 1970, and that the $8,161.03 amount was insufficient to reimburse additional costs incurred by Winzen Research, Inc. after May 15, 1970." Plaintiff challenges this finding insofar as it states that one of the reasons given was "that plaintiff still was not making legal tender." We sustain this contention. Neither Williams nor Morrison testified that Williams told Morrison he would not accept the check because it was not legal tender. According to Williams' own testimony, he did not tell Morrison he would not take the check and the only reasons he gave Morrison as to why it would do no good to come to his office were (1) that the option had already expired on May 15 and (2) that he had incurred additional expenses since that date. This statement by Williams can be reasonably understood only as an unqualified refusal to accept a further tender. Defendant argues that plaintiff was nevertheless required to confront Williams or some other officer of Winzen in Winzen's office and physically lay before him the amount of currency required by the option contract. We do not agree that such a futile ceremony was required. The law is well settled that formal tender is excused when the tenderor is able to pay and the tenderee has signified unwillingness to accept the money.[4] Even the authorities relied on by defendant recognize that when tender is refused on grounds other than the medium of payment, the tenderee will not be heard later to complain of the medium of payment.[5] We hold that this rule applies even though the tenderee has previously demanded legal tender, since in this situation as in any other, refusal of tender on grounds other than the medium of payment tends to prevent the tenderor from making a formal tender.

█ This principle is clearly applicable here. Williams' conversation with Morrison took place well before noon on May 19. If Williams had said, "We don't want a check, we want money," Morrison could have immediately contacted Modern Aero in Dallas and made arrangements to have the money in Winzen's office on the same day, within the "reasonable time" found by the court. Defendant reminds us that the services of Western Union were available to send money from Dallas to Minneapolis, and we are willing to take judicial notice of that fact. Since the foreseeable effect of Williams' statement to Morrison was to prevent such a formal tender, defendant will not be heard to say that such a tender was required.

Defendant argues that Williams' statement did not excuse formal tender because Morrison was unable to make formal tender. Assuming without deciding that formal tender of the cashier's check would not have been sufficient, we cannot agree that plaintiff was unable to make a tender in cash on that date, since Morrison had in hand the cashier's check purchased by Modern Aero the day before, and Robinson, the banker, testified that plaintiff had an established line of credit at National Bank of Commerce for purchase of aircraft.

█ Defendant also contends that it was justified in refusing to accept tender of the cashier's check because of additional expenses incurred after May 15. We do not agree. Defendant's letter of May 14 demanding legal tender mentioned no such expenses. If a seller demands legal tender and the purchaser attempts a further tender within the extension period allowed by § 2.511(b), the seller is not justified in refusing to accept the amount originally due

4. Gulf Pipe Line Co. v. Nearen, 135 Tex. 50, 138 S.W.2d 1065 (1940); Ada Oil Co. v. Logan, 447 S.W.2d 205 (Tex.Civ. App., Houston [14th Dist.] 1969, no writ); Benson v. Meacham, 263 S.W.2d 188 (Tex.Civ.App., San Antonio 1953, writ ref'd).

5. See cases cited *supra* note 2. See also Eureka Producing Co. v. Hoyt, 266 S.W. 203 (Tex.Civ.App., Fort Worth 1924, writ dism'd).

on the ground of expenses previously unspecified. If the seller knows that the extension will involve additional expenses, he should specify the amount of such expenses and give the buyer a reasonable time to tender the additional amount. When the seller refuses to accept tender on the ground of its inadequacy to cover previously unspecified expenses in an undetermined amount, the buyer is justified in treating such nonacceptance as an unqualified refusal. *See* Young v. Fitts, 138 Tex. 136, 157 S.W.2d 873 (1942). This conclusion is particularly appropriate here because, according to Williams' testimony, one of the undetermined expenses he mentioned to Morrison on May 19 was that of sending a pilot to Dallas to pick up the plane on Saturday, May 16, the very day on which plaintiff received defendant's letter of May 14 demanding legal tender. Under these circumstances Williams' statement concerning additional undetermined expenses could not reasonably have been taken as an expression of willingness to accept a further tender covering additional expenses, but only as corroborating his declaration that no tender would be accepted because the option period had already expired.

We hold that Williams' statement to Morrison was a refusal of the tender on grounds other than the medium of payment and excused further tender by plaintiff, and that his refusal to transfer title to the aircraft was a breach of the option contract, which entitled plaintiff to recover damages measured by the difference between the option price and the market value. In this suit for such damages, as distinguished from one for title to the aircraft or for specific performance, plaintiff was not required to show that it had made a further tender or had kept the tender good, since after defendant's breach plaintiff had no obligation to pay.

Plaintiff contends in its next to last point that the trial court erred in refusing to render judgment for plaintiff in the amount of $7,838.97, the difference between the fair market value of the aircraft and the option price of $8,161.03. We sustain this contention, since defendant presents no counterpoint or other response to it. Plaintiff says that the market value of the aircraft is established conclusively in the amount of $16,000 by uncontradicted testimony. Since this statement is not challenged in appellee's brief, we accept it as true under Texas Rules of Civil Procedure 419, though normally testimony concerning value raises only a fact issue. Accordingly, we reverse the judgment below and render judgment for plaintiff against defendant Winzen in the amount of $7,838.97, plus interest at the legal rate from May 19, 1970, to this date.

Reversed and rendered.