Claud PENNY et al., Appellants,

v.

Horace Wendell KELLEY et
ux., Appellees.

No. 7728.

Court of Civil Appeals of Texas,
Beaumont.

Sept. 25, 1975.

J. C. Zbranek, L. J. Krueger, Liberty, for
appellants.

Wayne Carter, Conroe, for appellees.

KEITH, Justice.

Plaintiffs below appeal from an adverse judgment rendered in a suit to remove cloud from the title to 33⅓ acres of land in Liberty County. The sole issue involved was the validity of the foreclosure of a deed of trust lien on the land. We condense, as much as possible, the voluminous record presented.

Defendants sold the property to one Lakey in 1965 for a total consideration of $15,000, one-third of which was paid in cash with the balance being evidenced by a vendor's lien note payable in monthly installments and additionally secured by a deed of trust on the property. We will speak of this as the Kelley note and lien. Thereaft-

er, in 1967, Lakey conveyed the property to one Lewis with the purchaser assuming the balance of the Kelley note then in the principal sum of $8,970.65 and paying an additional cash consideration.

Lewis conveyed the property, in 1969, to the plaintiffs receiving $5,000 in cash, the plaintiffs' assumption of the outstanding balance on the Kelley Note ($6,936.50), and a second lien note in the amount of $8,563.50. Plaintiffs did not pay the installments due upon the Kelley note during each of the first four consecutive months following their purchase of the property from Lewis, their excuse being that they did not know where the note was payable.

In September, 1969, one of the plaintiffs talked with Kelley regarding the note and lien and was referred to his attorney, J. R. Beck in Beaumont. Mancil, the plaintiff handling the negotiations with Beck agreed with the attorney that upon presentation of the proper assignments, notes, etc., accompanied by a draft drawn upon the Farmers State Bank of Cleveland, that the Kelley note (along with Lewis' second lien note) would be paid by the Bank. Beck sent the note and an assignment of the note and lien to the Bank, but the Bank's attorney declined to approve the transaction because no indorsement had been made upon the note itself, there being a simple assignment thereof among the documents accompanying the draft.

Mancil and Bank's attorneys both talked with Beck about the indorsement requirement, and the papers were returned to Beck. According to plaintiffs' version of the matter, they were not told of any impending foreclosure proceedings under the Kelley deed of trust. Without any further communication with either the Bank or plaintiff (or the second lien holder), Beck's law partner, who was trustee in the deed of trust, posted notices of Trustee's Sale for the first Tuesday in October, conducted the sale, and executed a trustee's deed to Kelley. This suit was filed immediately and shortly thereafter Lewis intervened and aligned himself with plaintiffs who recognized the validity of Lewis' indebtedness. Lewis did not, however, seek a personal judgment upon his note, his efforts being directed at protection of his second lien from extinguishment by the foreclosure of the Kelley first lien.

There is little dispute over the operative facts of the case. It seems clear that plaintiffs had a valid oral commitment from the Bank to advance the funds with which to pay off both liens so that they could be consolidated into one lien in favor of the Bank; that Beck, as agent for Kelley, refused to require his clients to indorse the note on the instrument itself; that the foreclosure proceedings were regular unless defeated by the allegations and proof in plaintiffs' suit.

In answer to the several special issues, the jury found: (1) That prior to October 7, 1969, plaintiffs had procured sufficient funds to pay off the balance of the Kelley note. (2) That on October 6, 1969 the Bank's attorney told defendant Kelley that such money was available upon presentation of the Kelley note "properly assigned to the Farmers State Bank.[1] (3) That J. R. Beck was representing defendants in the collection of the note. (4) That plaintiffs offered full payment to Beck upon presentation of the Kelley note properly assigned to the Bank. (5) If the Kelley note had been properly assigned on the note by the Kelleys and presented to the Bank on or before October 7, 1969, it would have been paid in full.

The jury answered "[w]e do not" to Special Issue No. 6 inquiring if plaintiffs made to defendants "an unconditional tender of sufficient funds to pay off the balance of the Kelley note." We quote the accompa-

---

1. The jury was instructed "[b]y the term 'assigned on the note by defendants' as used in this Charge is meant the signatures of the defendants assigning plaintiffs' exhibit P–7 [the original Kelley vendor's lien note] without recourse on said exhibit itself."

nying instruction defining "tender" in the margin.[2] The court overruled plaintiffs' motion for judgment on the verdict after disregarding the jury's non-finding to No. 6 and entered a judgment for defendants quieting their title and possession in and to the property.

■ We first dispose of the tender question under the undisputed facts. Kelley, through his own acts and those taken under the direction of Beck, had agreed to payment from the Bank upon presentation of the necessary documents to enable the Bank to succeed to the full rights of Kelley in and to the ownership of the note and lien then held by Kelley. In *Cockrum v. Underwood*, 301 S.W.2d 953, 954 (Tex.Civ.App.—Beaumont 1957, no writ), the rule was laid down in this language:

> "When a tender is refused for reasons other than the medium tendered, one may not later, as in the case at bar, complain of the medium of tender; 40 Tex.Jur. pg. 852; *Gulf Pipe Line Co. v. Nearen,* 135 Tex. 50, 138 S.W.2d 1065."

See also: *Littlejohn v. Johnson,* 332 S.W.2d 439, 441 (Tex.Civ.App.—Waco 1969, no writ); *Chancey v. Wilson,* 378 S.W.2d 395, 398 (Tex.Civ.App.—Amarillo 1964, no writ); *Crowe v. Fred C. Kroeger & Sons,* 468 S.W.2d 507, 513 (Tex.Civ.App.—Beaumont 1971, no writ).

Indeed in *Baucum v. Great American Insurance Co. of New York,* 370 S.W.2d 863, 866 (Tex.1963), the Court said: "We agree with the proposition stated by the Court of Civil Appeals that when a tender is refused on other grounds one will not be heard later to complain of the medium of payment."

Moreover plaintiff Mancil, himself a bank officer familiar with the commercial practices in the area, and a bank official in a competing bank in the area, both testified that the uniform practice was to require an indorsement upon the note itself, not simply an assignment upon a separate paper. Justice Guittard in *Modern Aero Sales, Inc. v. Winzen Research, Inc.,* 486 S.W.2d 135 (Tex. Civ.App.—Dallas 1972, writ ref'd n. r. e.), has discussed in detail the question of legal tender under the rule laid down in *Tex.Bus. & Comm.Code Ann. § 2.511(b)* (1968), reading:

> "Tender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender and gives any extension of time reasonably necessary to procure it."

Under our undisputed record, the tender made by plaintiffs qualified as a legal tender unless defendants were excused from their obligation to indorse the note upon the instrument itself, a matter to which we now turn.

It is said [*11 Am.Jur.2d, Bills & Notes, § 349* at 369 (1963)], that "[t]he word 'indorsement'—literally, 'writing on the back,' derived from the Latin 'indorsa'—is employed to designate the contract whereby the holder of a bill or note transfers to another his right to such instrument." *Tex. Bus. & Comm.Code Ann. § 3.202(b)* (1968), required that "[a]n indorsement must be written by or on behalf of the holder and *on the instrument* or on a paper so firmly

2.  "'Tender' is defined as an unconditional offer to pay the exact amount of a debt, coupled with the act of producing the money or thing to be paid, with the willingness and ability to place it at the disposition of the person who is authorized to receive it and give the debtor acquittance. A 'tender' requires not merely the readiness and ability to perform or pay, but also the actual production of the thing to be delivered over and offer of it to the persons to whom the tender is to be made. In order to make a valid tender of either money or chattels, the thing to be tendered must be actually produced and offered to the party entitled thereto, a mere offer to pay being insufficient; and the tenderer must place the money or property in such a position that his control over it is relinquished for a sufficient time to enable the tenderee, if he so desires, to reduce it to possession by merely reaching out and laying hold of the money or thing; and a person is not bound to say whether or not he will accept the money or thing until it is produced." .

affixed thereto as to become a part thereof."[3] (Emphasis supplied.)

 We are of the opinion that the assignment of the Kelley note, without indorsement upon the instrument itself, was not in compliance with the provisions of the Code or the commercial practices governing such transaction. If defendants were to demand legal tender, they were required to indorse the note and cannot now rely upon a failure to tender money in discharge of the obligation represented by the note itself. *Modern Aero,* supra. Consequently, the foreclosure of the lien without giving plaintiffs a reasonable time to comply with the demands then made, was unauthorized. Id., *§ 2.511(b).*

 Although it appears to this court that the case is fully developed, we are unable to render judgment herein. Thus, we reverse the judgment of the trial court and remand the cause for the entry of judgment in accordance herewith. The trial court will take into consideration the requirements of *Tex.R.Civ.P. 813* and the stipulation of the plaintiffs and defendants made upon the trial of this cause (that there was due upon defendants' note at the time of the foreclosure, the sum of $8,353.86) in entering judgment. The tender of payment by plaintiffs invoked the provisions of *Tex.Bus. & Comm.Code Ann. § 3.604(a)* (1968), so as to relieve plaintiff of liability subsequent to October 6, 1969, to pay interest, cost and attorney's fees.

Should plaintiffs, or intervenors on behalf of plaintiffs, comply with the provisions of *Tex.R.Civ.P. 813* by making the deposit required, the first lien of defendants will be extinguished by said judgment and the note and lien of intervenors shall, in such instance, become a first lien upon the property involved herein. The provisions of *Tex. Bus. & Comm.Code Ann. § 3.604(a)* shall likewise apply to the lien of intervenors.

All costs in all courts are adjudged against the defendants.

Reversed and remanded with instructions.

---

3. See also: *9 Tex.Jr.2d, Bills & Notes, § 141,* p. 149 (1969); Annotation, "Indorsement of Negotiable Instrument by Writing Not on Instrument Itself," *19 A.L.R.3d 1297* (1968); W. Britton, "Transfers and Negotiations, *32 Tex.L.R. 153, 160* (1953).