IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00159-CV

 

Clarence Jensen,

                                                                                    Appellant

 v.

 

Jason Covington,

                                                                                    Appellee

 

 

 



From the 273rd District Court

Shelby County, Texas

Trial Court No. 04CV-28,421

 



O p i n i o n



 

            Clarence Jensen sued Jason Covington to compel him to convey the
interest Covington had acquired as the purchaser in a tax sale of Jensen’s real
property.  Jensen contended that he had tendered, or attempted to tender, the
price required to redeem the property under section 34.21 of the Texas Tax Code,
but that Covington thwarted his redemption attempt.  Jensen requested a
declaratory judgment that (1) his tender of the redemption price was
sufficient, (2) determined the redemption price, and (3) required Covington to execute a deed conveying the property to Jensen.  Covington claimed that
Jensen did not make an effective tender in a timely manner.  After a bench
trial, the court ruled that Jensen had not redeemed the property and entered a
take-nothing judgment.  Presenting thirteen issues, Jensen appeals.  We will reverse
and remand.

Factual Background and Evidence

            Jensen, a retiree, inherited the real
property at issue (a house) from his mother.  The ad valorem taxes were
overdue, and the local taxing authorities obtained a judgment on the delinquencies. 
The property was sold at a tax sale to the Center ISD as trustee on June 4,
2003, and the Sheriff’s Tax Deed was recorded on August 14, 2003.  Jensen had 180
days—until February 10, 2004—to redeem the property.  See Tex. Tax Code Ann. § 34.21(e)(1) (Vernon Supp. 2006).  On September 16, 2003, Center ISD sold the property to Covington.

            Having redeemed the property once
before, Jensen was familiar with the redemption process, but he had
miscalculated his 180-day deadline by a few days.  Around 3:00 p.m. on February
10, 2004, while in Richardson, Texas, Jensen contacted a Center lawyer, Ken
Muckelroy, who determined that the redemption deadline was February 10.  Jensen,
working from a Kinko’s copy center in Richardson, hurriedly borrowed money to cover
the redemption price and had the funds wired to Muckelroy.  From the available
information, Muckelroy estimated the redemption price amount and placed it in
his escrow account.  His secretary, Susan Livingston, hand-delivered a letter to
 Covington, who ran a lumber yard about a half-mile from Muckelroy’s office. 
The letter, which was also sent by certified mail, states:

Please be advised that my client, Clarence Jensen,
has elected to exercise his right of redemption, as to the above-referenced
property, according to Section 34.21 of the Property Tax Code.

 

Mr. Jensen hereby requests a written itemization
of all amounts spent by you in costs on the property.  “Costs” includes those
items defined in Section 34.21(i) of the Property Tax Code.  Please forward the
itemization to my office.

 

You may come to my office to execute a Quitclaim
Deed; to confirm the amount necessary for redemption; and to pick up a check,
drawn on my escrow account, for your proceeds.  If you wish to handle this
process in a different manner, please let me know.

 

Livingston took the letter in an envelope to Covington at his lumber yard, along with an extra copy that was intended for him to sign
as an acknowledgement of receipt.  Livingston said that she handed the envelope
and the extra copy to Covington and that he glanced over it and asked if
Muckelroy was in the office.  Livingston responded that he was in the office,
and Covington handed the letter back to her without signing it.  She returned
to the office and reported to Muckelroy what had happened.  Because Covington had asked if Muckelroy was in the office, she assumed Covington would be coming
to the office.

Covington
admitted that Livingston brought him an envelope but denied that she gave him a
copy and asked him to sign it.  He said that he told her that he would “come by
and see Ken later.”  Covington testified that he did not open the envelope,
read the letter, inquire why Muckelroy’s employee had hand-delivered correspondence
to him, or call Muckelroy.  He claimed he was busy running his lumber yard,
though he promptly left at 5:00 p.m. that day.  His explanation for not reading
the letter or inquiring about the hand-delivery was that he assumed the subject
matter concerned a 1997 transaction in which Muckelroy had represented him.

Muckelroy waited at his office until approximately
6:30 p.m., but Covington never came.  Muckelroy called Covington’s home twice
and left a message.  While waiting, Muckelroy had Livingston send the letter to
 Covington by fax at 5:49 p.m. with a fax cover sheet that stated:  

Ken just wanted to make it clear to you that Mr.
Jensen has deposited more than enough money in my [sic] trust account to
pay you, but we do not know the exact amount of the redemption until we hear
from you as to the [sic] your expenses.  Ken will be in the office until
6:00 PM.  Thanks.

 

Despite the hand delivery and the fax, Covington never contacted Muckelroy on February 10.  The next day, Muckelroy called Covington’s business twice but was unable to speak to him.  He also went to Covington’s business to speak with him, but after he identified himself, the employee
inquired within and returned to tell Muckelroy that Covington was not there. 
Muckelroy next drove to Covington’s residence and left with Covington’s wife a
quitclaim deed and a check from Muckelroy’s escrow account payable to Covington in the amount of $45,625.00.  Muckelroy testified that Mrs. Covington’s wife
accepted the check and quitclaim deed and told him it would not be necessary to
pay the county tax assessor-collector.  Mrs. Covington disputed Muckelroy’s
account, denying that she understood the purpose of Muckelroy’s visit and
saying that she laid aside the documents until Covington came home.  Finally,
Muckelroy sent a February 11 letter by fax to Covington, stating in pertinent
part:

On the afternoon of February 10, 2004, my
secretary, Susan Livingston, hand delivered Mr. Clarence Jensen’s notice of
redemption to you, and you told her that you would come to my office and
discuss this matter.  I waited at my office for you until after 6:30 p.m.
before calling your home and leaving a second message.  I have also placed two
calls for you today.

 

            Muckelroy said that he never made a
payment to the tax-assessor collector because he never got an itemization of Covington’s costs and because he believed that Mrs. Covington had accepted his check as
payment of the redemption amount.  Covington testified that he had paid taxes
on the property and he produced receipts showing his maintenance costs.  He
admitted that, as of February 10, he had sufficient records of his expenses as
of that date so that he could have provided Muckelroy an itemization if he had
chosen to do so.

            On February 12, Covington’s attorney
retuned the check to Muckelroy with a letter stating that the tender was
unacceptable to Covington and insufficient to redeem the property because it
was tardy, conditional, and “not in the form which would discharge the
underlying obligation under the Texas Business and Commerce Code.”

Applicable Law

 

Section 34.21 of the Texas Tax Code controls this
case.  It provides in pertinent part:

(a) The owner of real property sold at a tax sale
to a purchaser other than a taxing unit that was used as the residence
homestead of the owner or that was land designated for agricultural use when
the suit or the application for the warrant was filed, or the owner of a
mineral interest sold at a tax sale to a purchaser other than a taxing unit,
may redeem the property on or before the second anniversary of the date on
which the purchaser’s deed is filed for record by paying the purchaser the
amount the purchaser bid for the property, the amount of the deed recording
fee, and the amount paid by the purchaser as taxes, penalties, interest, and
costs on the property, plus a redemption premium of 25 percent of the aggregate
total if the property is redeemed during the first year of the redemption
period or 50 percent of the aggregate total if the property is redeemed during
the second year of the redemption period.

. . .

(e) The owner of real property sold at a tax sale
other than property that was used as the residence homestead of the owner or
that was land designated for agricultural use when the suit or the application
for the warrant was filed, or that is a mineral interest, may redeem the
property in the same manner and by paying the same amounts as prescribed by
Subsection (a), (b), (c), or (d), as applicable, except that:

(1) the owner’s right of redemption may be
exercised not later than the 180th day following the date on which the
purchaser’s or taxing unit’s deed is filed for record;  and

(2) the redemption premium payable by the owner to
a purchaser other than a taxing unit may not exceed 25 percent.

 

(f) If the owner of the real property makes an
affidavit that the owner has made diligent search in the county in which the
property is located for the purchaser at the tax sale or for the purchaser at
resale, and has failed to find the purchaser, that the purchaser is not a
resident of the county in which the property is located, that the owner and the
purchaser cannot agree on the amount of redemption money due, or that the
purchaser refuses to give the owner a quitclaim deed to the property, the owner
may redeem the land by paying the required amount as prescribed by this section
to the assessor-collector for the county in which the property described has
been redeemed.  The assessor-collector receiving the payment shall give the
owner a signed receipt witnessed by two persons.  The receipt, when recorded,
is notice to all persons that the property described has been redeemed.  The
assessor-collector shall on demand pay the money received by the
assessor-collector to the purchaser.

. . .

(i) The owner of property who is entitled to
redeem the property under this section may request that the purchaser of the
property, or the taxing unit to which the property was bid off, provide that
owner a written itemization of all amounts spent by the purchaser or taxing
unit in costs on the property.  The owner must make the request in writing and
send the request to the purchaser at the address shown for the purchaser in the
purchaser’s deed for the property, or to the business address of the collector
for the taxing unit, as applicable.  The purchaser or the collector shall
itemize all amounts spent on the property in costs and deliver the itemization
in writing to the owner not later than the 10th day after the date the written
request is received.  Delivery of the itemization to the owner may be made by
depositing the document in the United States mail, postage prepaid, addressed
to the owner at the address provided in the owner’s written request.  Only
those amounts included in the itemization provided to the owner may be allowed
as costs for purposes of redemption. 

. . .

Tex. Tax Code
Ann. § 34.21.

            Jensen, as the property owner, had the
burden to prove payment or tender of redemption money to Covington, the
purchaser of the property, within the 180-day redemption period.  See
Burkholder v. Klein ISD, 897 S.W.2d 417, 420 (Tex. App.—Corpus Christi
1995, no writ).  We construe redemption statutes liberally in favor of the
right of redemption.  See ABN AMRO Mortg. Group v. TCB Farm & Ranch Land Investments, 200 S.W.3d 774, 780 (Tex. App.—Fort Worth 2006, no pet.); UMLIC VP LLC
v. T & M Sales & Env. Sys’s., 176 S.W.3d 595, 607 (Tex. App.—Corpus
Christi 2005, pet. ref’d); Rogers v. Yarbrough, 923 S.W.2d 667, 669
(Tex. App.—Tyler 1996, no writ); Jackson v. Maddox, 53 Tex. Civ. App.
478, 117 S.W. 185, 185 (1909, no writ) (quoting Dubois v. Hepburn, 35 U.S. (10 Pet.) 1, 9 L.Ed. 325 (1836)).  Additionally, an owner seeking to redeem property must
only substantially comply with the redemption statute, as the enactment of the
statute reflects the public policy in favor of redemption.  See Macha v. Camareros,
674 S.W.2d 492, 493 (Tex. App.—El Paso 1984, no writ).  A purchaser at a tax
sale buys with knowledge of the statutory right of redemption.[1] 
ABN, 200 S.W.3d at 780.

Analysis

The trial court filed findings of fact and
conclusions of law.  Findings
in a bench trial have the same force and dignity as a jury’s verdict upon jury
questions.  Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991).  A trial court’s findings are reviewable for legal and factual
sufficiency of the evidence by the same standards that are applied in reviewing
evidence supporting a jury’s answer.  Catalina v. Blasdel, 881 S.W.2d
295, 297 (Tex. 1994).  We review the trial court’s conclusions of law de novo. 
Smith v. Smith, 22 S.W.3d 140, 143-44 (Tex. App.—Houston [14th Dist.]
2000, no pet.).

Redemption Price

The trial court made a finding that the redemption
price was $45,625.00.  In Jensen’s first four issues, he challenges the
evidentiary sufficiency of the $45,625.00 finding.[2]

                Section 34.21 provides that an owner desiring to
redeem his property must pay the purchaser (1) the amount the purchaser paid
for the property at the tax sale; (2) the deed recording fee; (3) the amount
paid by the purchaser as taxes, penalties, and costs on the property; and
(4) a redemption premium of 25% of the aggregate total.  See Tex. Tax Code Ann. § 34.21(a); Leach
v. Conner, 2003 WL 22860911, at *5 (Tex. App.—Corpus Christi Dec. 4, 2003, no pet.) (mem. op.).  Costs include the purchaser’s
costs in maintaining, preserving, and safekeeping the property, including
property insurance, repairs, and maintenance.  Tex. Tax Code Ann. § 34.21(g)(2).

            It is undisputed that Covington’s tax resale purchase price was $36,500.00.  The redemption price found by the
trial court, $45,625.00, is exactly that purchase price plus 25% of it.  But Covington testified that he had paid taxes on the property and paid for yard maintenance
(mowing and tree trimming), even offering into evidence dozens of receipts for
those expenses.  We agree with Jensen that the trial court’s finding that the
redemption price was $45,625.00 is erroneous as a matter of law because it did
not include Covington’s taxes and costs before calculating the redemption
premium.[3]  The
evidence conclusively establishes that an amount other than $45,625.00 is the
redemption price.[4]  We
sustain Jensen’s fourth issue.

            Timely Tender and Substantial Compliance

            The trial court made findings that
Jensen did not pay the redemption price to Covington before February 11, that
Jensen did not unconditionally offer to pay Covington the redemption price “in
current coin of the realm,” and that Jensen never relinquished possession of
the redemption price for a sufficient time and under circumstances to enable
Covington to acquire the funds without special effort.  Issues five through nine complain of the
evidentiary sufficiency of those findings.  The trial court’s labeling of these
findings as findings of fact is not controlling on appeal, and given their
subject matter and that the material facts in this case are essentially
undisputed, we consider these findings to be conclusions of law and will treat
them as such in addressing Jensen’s issues.  See Ray v. Farmers’ State Bank,
576 S.W.2d 607, 608 n.1 (Tex. 1979); Snyder Communications v. Magana, 94
S.W.3d 213, 242 n.18 (Tex. App.—Corpus Christi 2002), rev’d on other
grounds, 142 S.W.3d 295 (Tex. 2004).

The trial court made conclusions of law that
Jensen failed to substantially comply with subsections 34.21(e) and (f), that
Jensen did not timely tender payment of the redemption price to either Covington or the tax assessor-collector, and that Jensen was not entitled to redeem the
property.  Issues ten through thirteen assert that these conclusions are
erroneous as a matter of law.  In sum, issues five through thirteen boil down
to two questions of law:  Under the evidence in this case, did Jensen
substantially comply with section 34.21, and did he, under the circumstances,
make a timely tender to Covington of the redemption price?  We answer both
questions affirmatively.

Muckelroy, Jensen’s attorney, recognized that he
needed to know Covington’s costs to tender the correct redemption price.  His
initial letter advised Covington that Jensen was exercising his redemption
right and requested a cost itemization.  The letter concluded:  “You may come
to my office to execute a Quitclaim Deed; to confirm the amount necessary for
redemption; and to pick up a check, drawn on my escrow account, for your
proceeds.  If you wish to handle this process in a different manner, please let
me know.”  A follow-up fax stated that Muckelroy wanted to make it clear to Covington that Jensen has deposited more than enough money in Muckelroy’s trust account to
pay Covington but still needed to know Covington’s expenses.

To effect redemption, an unqualified tender of the
statutory amount must occur within the statutory time period.  See Rotge v.
Murphy, 198 S.W.2d 932, 936 (Tex. Civ. App.—San Antonio 1946, writ ref’d
n.r.e.).  A tender is an unconditional offer by a debtor to pay another a sum
not less in amount than that due on a specified debt.  Baucum v. Great Am.
Ins. Co., 370 S.W.2d 863, 866 (Tex. 1963).  A valid and legal tender of
money consists of the actual production of the funds to pay the debt involved. 
 Id. The tenderer must relinquish possession of the funds under such
circumstances as to enable the person to whom it is tendered, without special
effort on his part, to acquire possession.  Id.  However, a formal
tender is excused where the creditor has indicated he is unwilling to accept
what is due in discharge of the debt.  Strickland v. Coleman, 824 S.W.2d
188, 193 (Tex. App.—Houston [1st Dist.] 1991, no writ).

Jensen sufficiently tendered the redemption price
funds.  A recent case with similar facts and issues, Pavlow v. Jensen,
2005 WL 3310015 (Tex. App.—Houston [14th Dist.] Dec. 8, 2005, no pet.), is
instructive.[5] 
Muckelroy’s attempts to pay the redemption price were reasonable efforts to
relinquish possession of the funds for a sufficient time and under such
circumstances to enable Covington, without special effort on his part, to
acquire them because Covington provided Muckelroy no reasonable opportunity to
place the funds in his hands.  Id. at *3.  Covington admitted that he
told Muckelroy’s secretary that he would come and see him, but the record
leaves no doubt that Covington avoided Muckelroy in numerous respects.  Covington did not come to Muckelroy’s office, as he told Livingston he would, and he did
not respond in any respect to Muckelroy’s letters, faxes, phone calls, and
personal visits.  Moreover, Muckelroy told Covington to let him know if he
wanted to handle it differently and that his trust account had sufficient funds
to pay the redemption price, including Covington’s costs.

Jensen’s tender was not improperly conditional. 
He had a statutory right to request a cost itemization and a quitclaim deed, (see
Tex. Tax Code Ann. § 34.21(f),
(i)), and where the parties’ obligations are mutual and dependent, such a
tender is valid because Jensen had the statutory right to impose those
conditions.  See Wilson v. Klein, 715 S.W.2d 814, 821 (Tex. App.—Austin
1986, writ ref’d n.r.e.).  Nor did Jensen’s tender require a special effort on Covington’s part.  Pavlow, 2005 WL 3310015, at *4.  Covington admitted that he
had sufficient records of his expenses to provide an itemization, their offices
were a half-mile apart, and Muckelroy told Covington to let him know if he
wanted to handle it differently.

Finally, we reject the conclusion and Covington’s argument that Jensen’s tender was insufficient because it did not offer to pay
the redemption price “in current coin of the realm,” which appears to be a claim
that Jensen did not tender payment in cash.  But the method of tender of
payment is sufficient if it is made in a manner that is “current in the
ordinary course of business.”  Modern Aero Sales, Inc. v. Winzen Research,
486 S.W.2d 135, 138-39 (Tex. Civ. App.—Dallas 1972, writ ref’d n.r.e.). 
Muckelroy was familiar with the usual and ordinary course of business for
making payments in real estate transactions and said that a deposit of funds
into a trust or escrow account was the “most common,” the “overwhelming choice,”
and the usual and ordinary course of business for making such payments.  We
agree that, under the facts of this case, Jensen’s method of tender of payment
was sufficient.  We further hold that, in the face of Covington’s blatant
refusal to cooperate in the redemption, Jensen, through his attorney Muckelroy,
substantially and timely complied with section 34.21 by Muckelroy’s February 10
letter and fax that tendered the redemption price with a check from Muckelroy’s
escrow account.  We sustain issues five through thirteen.

Because
of our disposition on the above issues, we need not rule on Jensen’s remaining
issues.  We reverse the trial court’s judgment and remand the case to the trial
court for proceedings consistent with this opinion, including a redetermination
of the redemption price, including whether Covington should be allowed to
recover his expenses at all, and entry of such orders as necessary to require
Jensen to tender the correct redemption price for a quitclaim deed executed by
Covington in a manner designated by the trial court.

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray dissenting)

Reversed
and remanded

Opinion
delivered and filed August 8, 2007

[CV06]









[1]               Covington’s Tax Resale Deed for the
property provides that it “is given expressly under any right of redemption
remaining in the former owner of the property under the provisions of law. . .
.”

 





[2]               When the party that had the
burden of proof at trial complains of legal insufficiency of an adverse
finding, that party must demonstrate that the evidence establishes
conclusively, i.e., as a matter of law, all vital facts in support of
the finding sought.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).  We first examine the record for evidence supporting the adverse finding,
ignoring all evidence to the contrary.  Id.  If more than a scintilla of
evidence supports the adverse finding, our inquiry ends.  Id.  “More
than a scintilla of evidence exists where the evidence supporting the finding,
as a whole, rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.”  Burroughs Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995) (citations omitted).  In reviewing the legal
sufficiency of the evidence, we view the evidence in the light favorable to the
trial court’s finding, crediting favorable evidence if a reasonable factfinder
could, and disregarding contrary evidence unless a reasonable factfinder could
not.  City of Keller v. Wilson,
168 S.W.3d 802, 807, 822 (Tex. 2005).

When the party complaining of the factual
sufficiency of the evidence had the burden of proof at trial, it must
demonstrate that the adverse finding is contrary to the great weight and
preponderance of the evidence.  Francis, 46 S.W.3d at 242.  We weigh all
the evidence, and we can set aside the adverse finding only if it is so against
the great weight and preponderance of the evidence that it is clearly wrong and
unjust.  Id.





[3]               Covington contends that the trial
court’s redemption price finding was correct because Covington failed to
provide Jensen with an itemization of costs and thus was not entitled to
recover those costs.  See Tex.
Tax Code Ann. § 34.21(i) (“The purchaser or the collector shall itemize
all amounts spent on the property in costs and deliver the itemization in
writing to the owner not later than the 10th day after the date the written
request is received. . . .  Only those amounts included in the itemization
provided to the owner may be allowed as costs for purposes of redemption.”). 
He also claims that Jensen should have paid, but failed to pay, the trial
court’s redemption price to the tax assessor-collector because Jensen and Covington could not agree on the amount of the redemption money due.  See id. §
34.21(f) (providing that if “the owner and the purchaser cannot agree on the
amount of redemption money due,” the owner shall make an affidavit to that
effect and “may redeem the land by paying the required amount as prescribed by
this section to the assessor-collector for the county in which the property
described has been redeemed”).

We disagree with Covington’s construction of
subsections 34.21(f) and (i) as applied to the facts of this case.  In this
case, Covington could have provided, but chose not to provide, an itemization
to Jensen.  Covington claims that the statutory result should be that he waived
his recovery of costs (and the 25% redemption premium on them) and that Jensen
should lose because he did not tender the trial court’s redemption price to
either Covington or to the tax assessor-collector.  The statute, however, does
not provide for waiver in either the event of the purchaser’s silence or the
purchaser violates his statutory duty to provide an itemization.  Nor, under
the facts of this case, would we find a waiver that would only lead to Jensen’s
detriment.  We reject Covington’s strict statutory construction that disfavors
the right of redemption; our task is to give a liberal construction that favors
the right of redemption.  Subsection 34.21(i) presumes that the purchaser has
provided the mandatory cost itemization; in this case, Covington violated his
statutory duty to provide Jensen with the itemization.  While Jensen would be
the first to admit that he should not have waited until the last day to attempt
to redeem his property, the law cannot allow Covington to benefit from his
refusal to provide an itemization and from giving Jensen’s attorney the
“runaround.”  Covington cannot have it both ways:  he cannot assert that he had
ten days to respond to Jensen, and then use those ten days to claim that
Jensen’s tender was untimely.  Moreover, Jensen would have been required to pay
section 34.21’s “required amount” to the tax assessor-collector, and the
required amount included Covington’s costs that he would not provide Jensen. 
In any event, as we hold below, Jensen made a timely tender when he offered to
pay the itemization costs in whatever amount they were.  Because we are
remanding this cause to the trial court so that the redemption can occur, we
will allow the trial court to redetermine the redemption price, including
whether Covington should be allowed to recover his expenses at all.

 





[4]               Alternatively, we construe the
trial court’s redemption price finding as a conclusion of law and hold it to be
erroneous.





[5]               There, Susan
Jensen, a judgment debtor, hired an attorney to assist her in satisfying a judgment
that Pavlow had obtained against her.  The attorney could communicate with
Pavlow, who was pro se, by email and to a post office box number.  The first
attempt to satisfy the judgment was the attorney’s letter to Pavlow advising
him that Susan had deposited money into the law firm trust account and
informing him that he could obtain a check from the law firm by coming to the
office and signing a release.  Pavlow refused in an email response, stating he
would not sign a release unless the attorney mailed a check to his post office
box and until the check had cleared.  The attorney sent a second letter
informing Pavlow that he could obtain a certified check from the court clerk if
Pavlow signed a release.  Again, Pavlow refused.  Susan sued for injunctive and
declaratory relief, and the trial court entered summary judgment in her favor,
finding that she had tendered the full judgment amount but Pavlow had refused
the tender.  Pavlow v. Jensen, 2005 WL 3310015, at *1 (Tex. App.—Houston [14th Dist.] Dec. 8, 2005, no pet.).

On appeal, Pavlow argued that Susan did not make a
legal tender because she did not relinquish possession of or produce the funds
to him because they remained with her agents (her attorney and the court
clerk).  Because the judgment did not specify a place for payment, under the
common-law rule, Susan was required to seek out Pavlow to make a tender if he
could be found with reasonable diligence.  Id. at *3 (citing Baucum,
370 S.W.2d at 867).  The court held that Susan’s attempts to pay the judgment
were reasonable efforts to relinquish possession of the funds for a sufficient
time and under such circumstances to enable Pavlow, without special effort on
his part, to acquire them because Pavlow provided Susan no reasonable
opportunity to place the funds in his hands.  Id.  The court rejected
Pavlow’s argument that Susan did not make a legal tender because she required
him to make a “special effort” on his part to travel to either her attorney’s
office or the courthouse to collect the funds, finding that there was no
alternative that would accomplish the concurrent goals of paying Pavlow and
obtaining a release.  Id. at *4.